IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TAMMY SHERRELL WILSON,

      Plaintiff,

v.                                        Case No. 3:18-cv-00890

UNITED STATES; WEST VIRGINIA
DIVISION OF CORRECTIONS;
WEXFORD MEDICAL and
ADMINISTRATION/STAFF
AT FAULT, (1990 through present),

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, Tammy Sherrell Wilson (hereinafter "Plaintiff"), proceeding *pro se,* seeks money damages and equitable relief under 42 U.S.C. § 1983 for violations of her civil rights that allegedly occurred during her incarceration at the Lakin Correctional Center ("Lakin") in Mason County, West Virginia. (ECF Nos. 3, 6, 7, 8, 9, 15, 18, 26). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 5). Currently pending before the Court are the Motion to Dismiss of the West Virginia Division of Corrections and Rehabilitation[1] ("DCR") and the Motion to

---

[1] The West Virginia Division of Corrections was renamed the West Virginia Division of Corrections and Rehabilitation effective July 1, 2018. (ECF No. 27 at 2).

Dismiss of Defendant Wexford Health Sources, Inc. ("Wexford"). (ECF Nos. 27, 36). Plaintiff has filed responses in opposition to both motions. (ECF Nos. 33, 35, 39, 41). Therefore, the issues have been fully briefed.

As a preliminary matter, the undersigned **FINDS** that Plaintiff's complaint should be dismissed against the unserved defendant—the United States of America— because Plaintiff asserts no claim against the United States and concedes that no claim exists. As to the pending motions, the undersigned **FINDS** that Plaintiff's claims against the DCR are barred by the doctrine of sovereign immunity as set forth in the Eleventh Amendment to the United States Constitution (the "Eleventh Amendment") and, furthermore, are precluded under 42 U.S.C. § 1983. Therefore, the DCR is entitled to dismissal. With respect to Wexford, the undersigned **FINDS** that Plaintiff has alleged sufficient facts and claims to withstand a Motion to Dismiss. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **DISMISS** the United States, with prejudice; **GRANT** the DCR's Motion to Dismiss, (ECF No. 27), and **DISMISS** Plaintiff's complaint against the DCR, (ECF No. 15), with prejudice; **DENY** the Motion to Dismiss of Wexford, (ECF No. 36); and allow Plaintiff to continue discovery on the claims asserted against Wexford.

## I.    Relevant Facts and Procedural History

On September 16, 1991, Plaintiff was sentenced to life imprisonment after being convicted of first degree murder by a jury siting in the Circuit Court of Monongalia County, West Virginia. Plaintiff served a portion of her sentence at the Pruntytown Correctional Center and was transferred to Lakin in January 2007. All of Plaintiff's claims arise from her incarceration at Lakin. Following is a summary of the claims asserted by Plaintiff, as well as the grounds for dismissal raised by the defendants.

### A.  Plaintiff's Complaint

Plaintiff divides her causes of action into three overarching categories: (1) Denial of Access to Courts; (2) Denial of Medical Treatment; and (3) Violations of Liberty Interests. (ECF No. 3). Interspersed throughout these categories, Plaintiff includes separate claims of retaliation, harassment, and violations of the right to exercise her religious beliefs. While it is true that much of Plaintiff's complaint, which consists of the original pleading and multiple supplements, (ECF Nos. 3, 6, 7, 8, 9, 18, 26), is conclusory, she also provides numerous factual allegations and examples in support of her various claims.

Plaintiff alleges that in April 2011, she attempted to file a civil rights complaint related to retaliation, harassment, the grievance procedure, and the inadequacy of medical care at Lakin. (ECF No. 3 at 5). She claims that her efforts were thwarted by Lakin's staff; primarily by the law librarian, Ms. Wendelken/Birdsong ("Ms. Birdsong"), whose actions are delineated in the complaint. According to Plaintiff, she was asked by Ms. Birdsong to work in Lakin's library in 2010. In that position, Plaintiff enjoyed privileges that were not available to all inmates. (*Id.* at 11). However, once Ms. Birdsong became aware that Plaintiff was drafting a civil rights complaint, her working conditions changed. (*Id.*). Plaintiff's complaint was ultimately confiscated, and she was charged with a disciplinary infraction for having contraband. (*Id.* at 6). The alleged contraband consisted of her complaint and assorted legal papers. (*Id.*). As a result of the disciplinary action, Plaintiff claims that she lost her job in the library. In addition, her eleven-year record of having received no disciplinary charges was ruined, and her rehabilitation was interrupted.

Out of fear that she would be subjected to further retaliation, Plaintiff waited

until 2017 before attempting to file another civil rights complaint. In turn, Ms. Birdsong, who was still employed in Lakin's library, resumed her efforts to interfere with that process. Plaintiff again received a disciplinary charge related to her legal work. (ECF No. 3 at 8). Moreover, when Plaintiff began making copies of policies to support her complaint, Lakin increased the cost of copies from five cents per page to fifteen cents per page. (*Id.* at 9). Plaintiff alleges that the staff at Lakin subsequently lost or destroyed her personal property, including a diploma case, family pictures, and personal letters, (*Id.* at 10), and opened her legal mail. (ECF No. 26 at 4-7). She also complains that she was intentionally placed in overcrowded cells and in cells with aggressive or intolerable inmates. (ECF No. 6 at 2, ECF No. 7 at 2). Plaintiff contends that these are only some examples of the harassment and retaliation she has suffered at Lakin in response to her endeavors to access the court. Relying on these allegations, Plaintiff claims a denial of access to courts and harassment/retaliation for exercising her first amendment rights. (ECF No. 3 at 21, 22).

With respect to her liberty interest claim, Plaintiff asserts that the inmates at Lakin, all of whom are women, are victims of gender discrimination. In support of this claim, Plaintiff points to the opportunities and resources available at Mount Olive Correctional Complex ("MOCC"), the West Virginia penitentiary housing male inmates convicted of crimes similar in severity to those committed by the female inmates at Lakin. (ECF No. 3 at 8). Plaintiff notes that Lakin's law library is open and accessible to the inmates only a portion of each weekday, while the law library at MOCC is open and accessible all day on the weekdays and a portion of the weekends. (*Id.*). Plaintiff also points out differences in educational opportunities, stating that male inmates are permitted to obtain four-year college degrees, regardless of their crime of conviction.

4

(*Id*. at 18). In contrast, until January 2017, Lakin inmates were only offered "a hodge podge of classes with no degree curriculum in place." (*Id*. at 18). Beginning in 2017, the female inmates could take classes to pursue a two or four-year college degree, but inmates sentenced to life without the possibility of parole were excluded. Plaintiff adds that male inmates are permitted to have word processors, but Lakin inmates are only given access to typewriters. (*Id*. at 18). Similarly, the male inmates at MOCC have greater access to video games and play stations, arts and craft supplies, and workshops. (ECF No. 3 at 19; ECF No. 8 at 4).  Plaintiff alleges that male inmates receive medical devices—like heating pads and medical shoes—at no charge, while the Lakin inmates are required to buy them. (*Id*. at 20). Plaintiff includes many other examples of how male inmates at MOCC are treated better and receive more opportunities than female inmates at Lakin. (*Id* at 20; ECF No. 8 at 4).

Next, Plaintiff alleges that the kitchen staff at Lakin has violated her constitutional rights to exercise her religious beliefs by contaminating the Kosher cooking area and by serving her a diet that does not comport with her vegetarianism. (ECF No. 9). Specifically, Plaintiff states that she personally observed staff use the Kosher area in the kitchen to make eggs, hamburgers, and pork in violation of the policy directive covering religious food preparation. (*Id*.; ECF No. 15 at 1, 2, 12). Furthermore, although she has repeatedly advised kitchen staff that she is a vegetarian, the staff serves her meat with vegetables, (ECF No. 15 at 11-13), or serves her a vegan diet, depriving her of dairy products and protein. (ECF No. 3-1 at 34, 36; ECF No. 18 at 3). Plaintiff further believes that the staff at Lakin violated her constitutional right to exercise her religion by intentionally damaging or discarding religious items in her cell during an extended cell search. (ECF No. 7 at 3-5; ECF No. 8 at 3).

Also as part of her liberty interest claim, Plaintiff contends that the DCR has breached its contract with her pertaining to medical care. This claim stems from two accidents Plaintiff had while at Pruntytown Correctional Center. (ECF No. 3 at 17, 21). Plaintiff states that she agreed to forgo a lawsuit against the DCR related to the accidents and to the poor medical treatment she received after the accidents in exchange for the DCR's agreement that, going forward, Plaintiff would receive the best medical care available through the DCR. Plaintiff contends that the DCR violated the terms of its agreement by placing her in the hands of Wexford at Lakin. (*Id*. at 17). In support of this claim, Plaintiff indicates that prior to 2007, she received a custom-made brace for a serious knee injury, which she wore when her knee felt weak. (*Id*. at 17). In 2015, she was told by Lakin staff that she had to store the knee brace in Wexford's medical unit when she was not using it. However, the second time Plaintiff went to the medical unit to retrieve her brace, she was told that the brace could not be located. Since that time, Plaintiff claims to have suffered numerous falls caused by the weakness of her knee. (*Id*. at 17). Plaintiff alleges that, in fact, she would not have fallen and broken her wrist in September 2017 if the brace had been available, or replaced, by the DCR or Wexford. (*Id*.).

As to Wexford, Plaintiff claims that Wexford has repeatedly denied her medical treatment. (*Id*. at 12). Plaintiff states that she injured her right wrist in September 2017, requiring extensive surgery to correct it, and she wore a cast for approximately seven weeks thereafter. (*Id*. at 12). In November 2017, Plaintiff was ordered by Lakin staff to drop to the floor during an inmate fight in the dining facility. Plaintiff fell hard when attempting to comply with the order and was concerned that she had rebroken her wrist. She also believed that she had reinjured her knee, which had been severely

damaged years earlier while she was housed at Pruntytown Correctional Center. Additionally, Plaintiff was wearing a dental plate at the time she dropped to the floor, and the plate cut through her mouth in the fall. Her pod officer tried on three occasions to get Plaintiff into Wexford's medical unit for examination, explaining that Plaintiff was injured, but the requests were denied. (*Id.* at 13). She finally saw a doctor weeks later; however, at the time the complaint was filed, Plaintiff still had not received care for her wrist, mouth, and knee injuries. (*Id.* at 13-14). Plaintiff complains of persistent numbness and pain in her wrist and hand, as well as knee weakness. Plaintiff additionally describes having ongoing medical problems related to "recalled" surgical mesh that was implanted in her abdomen during a 2001 hernia surgery. (*Id.* at 14-15). Plaintiff claims that she has mesh "floating around inside" of her. Because of the mesh and her other untreated medical conditions, she allegedly is prevented by pain and functional limitations from working at an inmate job. (*Id.* at 14-15). Plaintiff also alleges that many treatments given in the past for chronic health conditions have recently been desisted by Wexford for budgetary reasons. (*Id.* at 16).

For relief, Plaintiff seeks monetary compensation, including lost wages; future medical expenses and other costs; punitive damages; an evaluation of the propriety of a class action; restoration of liberty interests she enjoyed at Pruntytown Correctional Center; rectification of gender discrimination in the treatment of West Virginia inmates; an order enjoining the defendants from harassment, retaliation, and the infliction of mental distress and correcting the negligence of officers in failing to protect her rights; and an order compelling the DCR to live up to its contractual obligations. (*Id.* at 23-25).

7

### B.  DCR's Motion to Dismiss

On October 15, 2018, after filing an answer to the complaint, the DCR filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 27). The DCR put forth seven grounds supporting its position that the complaint should be dismissed against it; including, that (1) it is entitled to Eleventh Amendment immunity; (2) it is not a "person" subject to suit under 42 U.S.C. § 1983; (3) Plaintiff's claims are barred by the two-year statute of limitations; (4) vicarious liability is not recognized under section 1983; (5) Plaintiff fails to comply with the requirements of the West Virginia Medical Professional Liability Act ("MPLA") in asserting her medical negligence claims; (6) the DCR is entitled to qualified immunity from all negligence claims; and (7) Plaintiff's claim for punitive damages is prohibited by law. (*Id.*). The DCR expands on these grounds in a supporting memorandum. (ECF No. 28).

In her response in opposition to the Motion for Judgment on the Pleadings, Plaintiff emphasizes that she has proof to support all of the factual allegations in her complaint and points out that the DCR does not refute the factual allegations. (ECF No. 35 at 2, 4). Plaintiff indicates that she can add the names of individuals to her complaint and cure any defect related to the DCR not being a "person." (*Id.* at 5). Plaintiff describes other evidence substantiating her claims of denial of access to courts, retaliation, harassment, due process violations, and inadequate medical care. Plaintiff refutes that the DCR is entitled to Eleventh Amendment immunity, arguing that such immunity is not automatic. (*Id.* at 13). Furthermore, she asserts that the statute of limitations does not bar her claims, because the DCR's violations have been ongoing. (*Id.* at 14). Plaintiff disputes that her medical claims are subject to the MPLA, explaining that her claims fall under the Eighth Amendment.(*Id.*). She further denies

8

that her claims against the DCR are based on negligence, which would afford the DCR qualified immunity, and argues that her complaint should not be dismissed based on her request for punitive damages, because she seeks other available relief. (ECF No. 35 at 15-16).

### C. Wexford's Motion to Dismiss

On December 19, 2018, Wexford filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (ECF No. 36). In a supporting memorandum, Wexford argues first that this Court lacks jurisdiction over Plaintiff's denial of medical care claims, because she failed to exhaust administrative remedies before filing suit. (ECF No. 37 at 5). Wexford notes that exhaustion is mandatory under the Prisoner Litigation Reform Act ("PLRA"), and a failure to exhaust is fatal to a prisoner's claim for damages. Wexford next argues that Plaintiff has not clearly stated an Eighth Amendment claim given that she failed to include factual allegations showing that Wexford was deliberately indifferent to a serious medical condition. (*Id.* at 7-10). Moreover, to the extent that Plaintiff's claims against Wexford are based on medical negligence, Wexford contends that Plaintiff failed to comply with the requirements of the MPLA, making her complaint subject to dismissal. (*Id.* at 12-13). As its fourth ground for dismissal, Wexford states that it is not a person subject to liability under section 1983. (Id. at 11). Finally, Wexford asserts that some of Plaintiff's claims are barred by the applicable statute of limitations. (Id. at 12).

In response to Wexford's motion, Plaintiff argues that she has set forth sufficient factual grounds to state a plausible claim against Wexford. (ECF No. 39). Plaintiff refutes Wexford's contention that she did not exhaust administrative remedies, stating that she "grieved what is grievable." (ECF No. 40 at 4). Plaintiff also takes issue with

Wexford's description of her claims as assertions of medical negligence and simple disagreements over medical care. (ECF No. 40 at 5-6). Plaintiff argues that Wexford intentionally ignored her medical needs, indicating by way of example that Wexford never followed through on taking x-rays that its own doctor ordered in December 2017. (*Id.* at 6). In further support of her complaint, Plaintiff offers multiple examples of Wexford's alleged deliberate indifference to serious medical needs. (*Id.* at 8-12). In a summary of her counter-arguments to Wexford's dispositive motion, Plaintiff adds that her current claims against Wexford are based on violations of the Eighth Amendment, and are not medical negligence claims subject to the provisions of the MPLA. (*Id.* at 18).

## II.    <u>**Standards of Review**</u>

The DCR moves for dismissal under Fed. R. Civ. P. 12(c). When a motion to dismiss is filed after an answer, the motion is treated as a Rule 12(c) motion for judgment on the pleadings. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see* Fed. R. Civ. P. 12(c) ("After the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."). A Rule 12(c) motion is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Burbach Broad. Co. of Delaware,* 278 F.3d at 405–06. The only relevant difference between a motion under Rule 12(b)(6) and one under Rule 12(c) is that, with the latter motion, the court also considers the allegations in the answer and accepts them as true, at least to the extent they have not been denied, or do not conflict with the complaint. *Farmer v. Wilson Hous. Auth.*, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004). Thus, "when deciding a 12(c) motion, the court may consider 'the content of the competing pleadings, exhibits

thereto, matters incorporated by reference in the pleadings, [and] whatever is central or integral to the claim for relief or defense.'" *Proffitt v. Bristol-Myers Squibb Co., No. CV 1:17-04391, 2018 WL 3318893, at \*2 (S.D.W. Va. July 5, 2018) (quoting *In re Coloplast Corp. Pelvic Support Sys. Prod. Liab. Litig.*, 219 F. Supp. 3d 577, 579 (S.D.W. Va. 2016)).

Wexford has moved for dismissal under Rule 12(b)(6). The purpose of Rule 12(b)(6) motion "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *also Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). As such, the Court assumes that the facts alleged in the complaint are true and draws all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach*, 278 F.3d at 405–06. "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis omitted).

While the court considers the facts in the light most favorable to the plaintiff, the court is not required to "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th

Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Nevertheless, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient to "give the defendant fair notice" of what the claim is and "the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Generally, a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 46 (1957).

In addition to seeking dismissal under Fed. R. Civ. P. 12(b)(6), Wexford asks for dismissal under Rule 12(b)(1). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same

procedural protection she would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson*, 905 F.Supp.2d at 719. Still, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Plaintiff filed her amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the amended complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for her, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    Discussion

### A.  DCR's Motion for Judgment on the Pleadings

Looking first at the DCR's Motion to Dismiss, the undersigned **FINDS** that the DCR is immune from liability under the Eleventh Amendment and is not a "person" subject to suit under 42 U.S.C. § 1983. Therefore, the DCR should be dismissed from this action. Given these two well-established grounds for dismissal of the complaint, the undersigned need not address the other grounds raised by the DCR.

#### 1. The DCR is Entitled to Eleventh Amendment Immunity

The DCR argues that it is entitled to dismissal based on the principle of

sovereign immunity found in the Eleventh Amendment. The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court of the United States ("Supreme Court") has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Eleventh Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10−50−HMH−PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will,* 491 U.S. at 70; *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment sovereign immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express. In other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting

*Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia and its agencies have not waived sovereign immunity in this type of suit, and there is no indication that they are inclined to do so now. *See Kinder v. PrimeCare Med., Inc.,* No. CIV.A. 3:13-31596, 2015 WL 1276748, at *7 (S.D.W. Va. Mar. 19, 2015); *Skaggs v. W. Reg'l Jail,* No. CIV.A. 3:13-3293, 2014 WL 66645, at *5 (S.D.W. Va. Jan. 8, 2014); *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013). Therefore, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir. 1998), *aff'd* 528 U.S. 62 (2000)). In *Will v. Mich. Dept. of State Police*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability under § 1983. *Will,* 491 U.S. 58, 65 (1989). Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that

had Congress intended to include States as potential defendants under § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that interpreting the language of § 1983 "to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). However, ***a state officer*** must be named under this exception and that officer must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they

violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the DCR is an agency ***and not a state officer***, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that the lawsuit must name a state official as the defendant, not a state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction.").

In sum, since none of the exceptions apply, the undersigned **FINDS** that the DCR is shielded by the Eleventh Amendment's sovereign immunity from liability on Plaintiff's complaint.

### 2. The DCR is not a person subject to suit under § 1983

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172. In order to state a viable claim under § 1983, a plaintiff must show that: (1) a ***person*** deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the ***person*** did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999)

(emphasis added).

In *Will,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of … § 1983." 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

Accordingly, the Court must consider whether the DCR is an arm or alter ego of the State of West Virginia. If so, then Plaintiff cannot maintain a federal civil rights complaint against the DCR, because § 1983 may only be used to file suit against a person. "In determining if a public entity is an alter ego of the state … courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." *Maryland Stadium Auth.,* 407 F.3d at 260. In this case, the query is easily answered as the law is well settled that the DCR is an "arm of the State" of West Virginia and not a "person" under § 1983. *See, e.g., Mitchell v. Janice*, Civil Action No. 1:07-0625, 2009 WL 4666010, *1, n. 3 (S.D.W. Va. 2009) ("[T]he West Virginia Department of Corrections is not a "person" as required by Section 1983"); *Berry v. Rubenstein*, No. 01:07–cv–535, 2008 WL 1899907, at *2 (S.D.W. Va. April 25, 2008) (same); *Rakes v. Rush*, No. CIV.A. 2:09-018, 2009 WL 2392097, at *7 (S.D.W. Va. Aug. 4, 2009)

18

(same).

Therefore, the undersigned **FINDS** that the DCR, as an arm of the State of West Virginia, is not a "person" subject to liability under § 1983.

### B. Wexford's Motion to Dismiss

Wexford raises five grounds for dismissal of the complaint against it:   (1) Plaintiff failed to exhaust administrative remedies; (2) Plaintiff failed to state the factual predicate for an Eighth Amendment claim; (3) Wexford is not a person subject to suit under § 1983; (4) Plaintiff failed to comply with the requirements of the MPLA; and (5) Plaintiff failed to assert claims prior to expiration of the applicable statute of limitations. For the reasons that follow, the undersigned **FINDS** Plaintiff's complaint against Wexford is sufficient to withstand its Motion to Dismiss. Therefore, Wexford's Motion should be **DENIED**.

### 1. Wexford's Claim of Failure to Exhaust Administrative Remedies is Premature

The PLRA requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). As the Supreme Court explained in *Porter v. Nussle*:

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.

*Id.,* 534 U.S. 516, 524 (2002) (citations and internal quotation marks omitted). The

purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court … and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

In *Ross v. Blake*, the Supreme Court considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Id.*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the Fourth Circuit reversed the lower court's decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion; such as, when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. On review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting that the exhaustion

requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court could not excuse a failure to exhaust, even to take unusual circumstances into account. *Id.*

Yet, the Supreme Court pointed out in *Ross* that the PLRA does contain one express exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

As a West Virginia inmate, Plaintiff was similarly obligated under the West Virginia Prisoner Litigation Reform Act ("WVPLRA"), W. Va. Code § 25-1A-1, *et seq.*, to exhaust administrative remedies before filing a federal lawsuit. According to the WVPLRA, "[a]n ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the

Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2(d). Pursuant to the DCR policy directive in place at the relevant time, in order to fully exhaust a grievance, an inmate must submit a G-1 Grievance Form to the Unit Manager within fifteen days of the grievable event. The Unit Manager must respond within five working days. If the Unit Manager provides an unfavorable response, the inmate must timely appeal the response to the Warden. The Warden must respond to the appeal within five working days, unless an investigation is warranted. In that case, the Warden has thirty days to investigate and respond to the appeal of the grievance. If the Warden's response is unfavorable, the inmate must appeal the Warden's response to the Commissioner of the DCR. *See* DCR Policy Directive 335.00. The entire grievance process must be concluded within sixty (60) days of the filing of the grievance, inclusive of any extensions. *McKenzie v. Delong*, No. 1:17CV154, 2018 WL 3435357, at *3 (N.D.W. Va. July 17, 2018) (citing *Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D.W. Va. Oct. 16, 2012), report and recommendation adopted, No. 1:11CV108, 2012 WL 5845219 (N.D.W. Va. Nov. 19, 2012).

As stated, exhaustion of remedies is mandatory and has limited exception. *Porter,* 534 U.S. at 524. Plaintiff claims that she exhausted all available state remedies by filing grievances with the appropriate parties. Plaintiff also alleges that no response was made to some of her grievances, and she took all available steps to remedy what she perceived to be continuing constitutional violations.

While the record suggests that Plaintiff may not have fully exhausted administrative remedies related to **all** of her claims against Wexford, she appears to have exhausted some of the claims. (ECF No. 3-1 at 19, 21). Moreover, Plaintiff alleges

that she exhausted all *available* remedies and can establish this through discovery. (ECF No. 3 at 3; ECF No. 40 at 2-3, 17-18). A plaintiff is not required to demonstrate that she has exhausted administrative remedies, nor is she required to attach proof of exhaustion to her complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust is an affirmative defense, requiring the defendant to prove that the plaintiff had available remedies, which she did not exhaust. *Id.* At this early stage of litigation, neither party has had an opportunity to collect, develop, and produce the evidence determinative of the exhaustion issue. Thus, based on the limited record before the Court, and Plaintiff's assertion in the complaint that she has exhausted all available remedies, it would be premature to dismiss the complaint based on a lack of exhaustion. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *and Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882,

at \*2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted).

Therefore, the undersigned **FINDS** that Wexford's motion to dismiss on the ground of lack of exhaustion is premature.

> ### 2. The Complaint Contains Enough Factual Allegations to State a Plausible Eighth Amendment Claim, and Plaintiff Need Not Comply With the MPLA to Assert an Alleged Constitutional Violation

Next, Wexford contends that Plaintiff has failed to state a factual predicate for an Eighth Amendment claim and further has failed to comply with the requirements of the MPLA in asserting a medical negligence claim. Certainly, the complaint is unwieldy; however, as Plaintiff is a *pro se* plaintiff, the Court should liberally construe the pleading, which consists of an original pleading with multiple factual supplements that were filed prior to Wexford's initial response. (ECF Nos. 3, 3-1, 6, 7, 8, 9, 15, 18, 26). Reading these documents together, Plaintiff includes sufficient factual grounds to support an Eighth Amendment claim able to withstand Wexford's Motion to Dismiss. In particular, Plaintiff describes several occasions on which Wexford refused to treat her wrist and knee injuries despite requests from a correctional officer on Plaintiff's behalf and notwithstanding her recent wrist surgery that required the implantation of medical hardware and seven weeks of casting. (ECF No. 3 at 12-15). Plaintiff claims

chronic pain, numbness, and functional limitations as a result of Wexford's repeated refusals to examine and treat her injuries. (*Id.*). Additionally, Plaintiff alleges that she has suffered ongoing medical consequences, such as pain, from recalled surgical mesh that remains in her abdomen. Plaintiff asserts that Wexford has been aware of this problem for an extended period of time, but has intentionally declined to remedy the situation.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, including the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, (1976). To comply with the Eighth Amendment, each State must provide its sentenced prisoners with "adequate food, clothing, shelter, and medical care ...." *Estelle v. Gamble,* 429 U.S. 97, 103, (1976). A prison official violates the Eighth Amendment when he responds to a prisoner's serious medical need with deliberate indifference. *Estelle,* 429 U.S. at 104; *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To state a cognizable Eighth Amendment claim, an inmate must meet two prongs; one objective and one subjective. Under the objective prong, the inmate must demonstrate the existence of a medical condition or need that is objectively serious. *Estelle,* 429 U.S. at 104. A medical condition is serious under the Eighth Amendment when it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would understand that medical attention is necessary. *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need may also be shown by the presence of a medical condition that significantly affects the prisoner's daily activities, or causes chronic and substantial pain. *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992); *see also Adams v.*

*Southwest Virginia Regional Jail Authority*, 524 Fed. Appx. 899, 900-01 (4th Cir. 2013). Also under the objective prong, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).

Under the subjective prong, the inmate must show that the defendant subjectively responded with deliberate indifference to the inmate's serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297–99, (1991). Not every refusal or delay of medical care will translate into a "constitutional liability" for prison officials. *Farmer,* 511 U.S. at 834 "[D]eliberate indifference entails something more than mere negligence … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835.

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See Id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, *supra* at 851-852. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). If the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. An inmate is not entitled to unqualified access to health care, and treatment may be limited to what is

medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977).

Here, Plaintiff alleges that Wexford and its personnel are aware of her chronic medical issues, some of which are serious. As Plaintiff points out, she has been an inmate for over twenty-seven years; accordingly, much of her medical treatment has been provided by Wexford and documented in its records. Plaintiff claims that Wexford knew that she suffered a substantial knee injury while at Pruntytown and that she had been implanted with hernia mesh that was "recalled." Furthermore, Wexford's staff knew that Plaintiff broke her wrist in September 2017, and the break was so severe that she required the implantation of hardware and casting. Plaintiff makes a showing that Wexford and its personnel were deliberately indifferent to her serious medical needs when they refused to see Plaintiff after she sustained a fall in November 2017 and claimed to have reinjured her wrist and knee. Plaintiff alleges that Wexford refused treatment despite having a correctional officer confirm that Plaintiff needed medical attention. According to Plaintiff, Wexford provided insupportable reasons for refusing to examine her; for example, Wexford staff decided that Plaintiff did not require examination and treatment, because she was already on medication for her chronic pain. When Plaintiff finally did see a medical professional three weeks after her fall, that professional allegedly ordered x-rays of Plaintiff's wrist to be taken immediately in order to determine the cause of her wrist deformity. However, five months later, the x-rays still had not been performed. (ECF No. 3 at 12-14). Plaintiff also claims that Wexford has known since 2008 that her surgical mesh was recalled, but did nothing to remedy the situation. Although Wexford assured Plaintiff that this matter would be addressed, eleven years later, she has received no follow-up care. (*Id.* at 15).

27

Wexford contends that Plaintiff received treatment for her medical conditions and portrays Plaintiff's complaint as nothing more than an expression of dissatisfaction over treatment she has received. Wexford stresses that disagreements between a medical provider and an inmate about treatment options do not rise to the level of a constitutional violation. While Wexford's recitation of the law is correct, it overlooks the fact that, at this stage of the litigation, Plaintiff is not required to prove her case; she must only state a plausible claim. *Perry v. Meade*, 728 F. App'x 180, 182 (4th Cir. 2018). Plaintiff alleges a potential reinjury to her broken wrist and damaged knee resulting in chronic pain and functional limitation. She also asserts that she carries within her abdomen surgical mesh that was recalled more than a decade ago. These allegations meet the objective prong of an Eighth Amendment claim. With respect to the subjective element, even assuming that Wexford "prescribed medication or offered advice to [Plaintiff], that alone does not foreclose [her] claims." *Id.* (citing *De'lonta,* 708 F.3d at 526) (holding that, even if the defendant "provided [plaintiff] with *some* treatment ..., it does not follow that [the defendant] ha[s] necessarily provided *constitutionally adequate* treatment")).

As Plaintiff's factual allegations are sufficient to state an Eighth Amendment violation, the undersigned **FINDS** that Wexford is not entitled to dismissal on this ground at this stage of the litigation.

In regard to Wexford's argument that Plaintiff failed to comply with the prerequisites set forth in the MPLA, the undersigned agrees with Wexford's conclusion. However, Plaintiff clarifies in her responsive brief to both the DCR's Motion for Judgment on the Pleadings and Wexford's Motion to Dismiss that she currently is not asserting medical negligence claims. To the contrary, Plaintiff explicitly states that she

28

is claiming violations of the Eighth Amendment by Wexford. Eighth Amendment claims are not governed by West Virginia's MPLA. Accordingly, the undersigned **FINDS** this ground for dismissal to be unpersuasive.

### 3. Wexford is a Person Under 42 U.S.C. § 1983

As its next ground for dismissal, Wexford contends that it is not a "person" under 42 U.S.C. § 1983; therefore, it is not subject to suit. In making this argument, Wexford ignores case law in this circuit that explains the liability exposure of private corporations, such as Wexford, under § 1983. Private corporations that employ individuals performing traditional state functions are state actors under § 1983. *See Cockerham v. Allen*, No. CIV.A. 2:13-09589, 2014 WL 1159340, at *6 (S.D.W. Va. Mar. 21, 2014) ("It is well-established that private corporations that are contracted with a state to provide services in a prison are acting 'under color of state law' under section 1983."). Whether the corporation itself can be held liable for alleged constitutional violations is not dependent upon its status as a "person" under § 1983, but rather upon the basis of liability alleged by the plaintiff. *See Covington v. Wexford Health Sources,* No. 2:10cv110, 2011 WL 308465, at *1 (N.D.W. Va. Jan. 25, 2011) (disagreeing with the Magistrate Judge that Wexford was not subject to liability because it was not a "person" and finding instead that a private corporation acting under color of state law may be held liable under § 1983 "when an official policy or custom of the corporation causes the alleged deprivation of federal rights.") (quoting *Page v. Kirby*, 314 F.Supp.2d 619, 622 (N.D.W. Va.2004); *see also Hensley v. Oketunji*, No. CV DKC-18-1170, 2019 WL 918407, at *13 (D. Md. Feb. 25, 2019) ("Private businesses that employ individuals who act under the color of state law are considered 'persons' under § 1983. But, there is no *respondeat superior* liability under § 1983. Rather, a private corporation may be held

liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.") (citations and markings omitted); *and Davis v. Wexford Health Sources, Inc.,* No. 2:15-cv-09756, 2017 WL 938319, at *4 (S.D.W. Va. March 9, 2017) (holding that Wexford could be held liable under § 1983 if an official policy or custom of the corporation was implicated).

As these courts clarify, the principles of liability that apply to private corporations acting under color of state law are similar to those applied to municipalities under *Monell v. Department of Social Services of City of N.Y.,* 436 U.S. 658, 694 (1978) (stating that claims of *respondeat superior* are not permitted under § 1983; however, a municipality may nevertheless be held liable for the constitutional violations of those in their charge when the violations occur in execution of an official policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."). *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (holding that the principles of § 1983 municipal liability set forth in *Monell* and its progeny apply equally to private corporations and cannot be predicated solely on a theory of *respondeat superior*.). Consequently, the question to be answered here is whether Plaintiff seeks to hold Wexford liable solely based on the alleged wrongful acts of its employees, or whether her claims against Wexford implicate its policies or customs.

Considering Plaintiff's complaint in the light most favorable to her, the undersigned **FINDS** that Plaintiff seeks to hold Wexford liable, at least in part, based on its policies and customs. Plaintiff expressly complains about Wexford's policy of staggering the days on which Lakin's inmates may seek medical care; thereby, limiting Plaintiff to receiving medical care only on Monday, Wednesday, or Friday. (ECF No. 3

at 13). She also asserts that Wexford has discontinued some services pertaining to chronic illnesses in order to save money. (*Id.* at 15-16, 29). The undersigned notes that Plaintiff has requested an opportunity to review Wexford's policies and been denied, because "Wexford policies are not for public view. Only Wexford staff may view." (ECF No. 3-1 at 37). Plaintiff cannot be expected to cite chapter and verse of the alleged unacceptable policies in her complaint when she is precluded from examining the policies.

Therefore, the undersigned **FINDS** that Plaintiff should be permitted in discovery to review the relevant policies and amend her claims, if appropriate, before considering a dismissal of her action against Wexford.

### 4.  Further Discovery is Needed to Determine the Application of the Statute of Limitations

Wexford contends that, at least as to the claims based on Plaintiff's misplaced leg brace and hernia mesh, her complaint is barred by the statute of limitations. Plaintiff argues in response that the claims arising from her discarded leg brace and untreated hernia mesh are not barred by the statute of limitations, because they are ongoing matters. (ECF No. 40 at 9-10). She indicates that the brace was first lost in 2015, but she continued to request its return or replacement and complain about the untreated weakness in her leg. Furthermore, Plaintiff states that she recently learned that the brace has been located; apparently, it was "donated" to a dog training program without her consent. (*Id.* at 10). Plaintiff alleges that Wexford's repeated refusals to treat Plaintiff's knee condition after the loss of the brace led to her suffering a number of falls, including the fall in September 2017, which resulted in her broken wrist. (*Id.*). As to her recalled hernia mesh, Plaintiff asserts that medical staff advised her in 2008

that her mesh had been recalled and promised to address the concern; yet, despite her queries over the years, Wexford staff still have not treated her condition.

In an action brought pursuant to 42 U.S.C. § 1983, the statute of limitations is determined by the law of the State in which the action is brought. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.") (citing *Owens v. Okure,* 488 U.S. 235, 249–250 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279–280 (1985)). "Where state law provides multiple statutes of limitations for personal injury, courts considering § 1983 claims should borrow the general or residual statute for personal injuries." *Owens,* 488 U.S. at 249-50. In West Virginia, the residual statute of limitations for a personal injury claim is two years. *See* W. Va. Code § 55-2-12(b) (providing that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]"). Therefore, a two-year limitations period is typically applied to claims filed in this district asserting Eighth Amendment violations. *See, e.g., Haynes v. Jimenez*, No. CIV.A. 5:05-CV-00820, 2008 WL 565028, at *7 (S.D.W. Va. Feb. 29, 2008).

Although state law governs the limitations period, federal law determines when the cause of action accrues, thus triggering the running of the limitations period. *Wallace,* 549 U.S. at 388. "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *See A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (quoting *Cox v. Stanton*, 529 F.2d

47, 50 (4th Cir. 1975)) (internal quotation omitted). However, in the case of a "continuing violation," the statute of limitations does not begin to run until the wrongdoing ceases. *Patrick v. Sharon Steel Corp.,* 549 F. Supp. 1259, 1264 (N.D.W. Va.1982) ("Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease."). The "continuing violation" doctrine applies to prisoner complaints asserting Eighth Amendment infringements. *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) ("Consistent with these views expressed by our sister circuits, we conclude that a prisoner may allege a continuing violation under Section 1983 by identifying a series of acts or omissions that demonstrate deliberate indifference to a serious, ongoing medical need. The statute of limitations does not begin to run on such a claim for a continuing violation of a prisoner's Eighth Amendment rights until the date, if any, on which adequate treatment was provided."). Pursuant to this doctrine, "[a] plaintiff's claim of a continuing violation may extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act." *Id.* (citing *Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001). Consequently, while Plaintiff's claim for reimbursement of the lost brace itself may be barred by the statute of limitations, her cause of action for injuries arising from the alleged ongoing lack of treatment associated with the lost brace and recalled mesh may not be barred. At this point in the litigation, the facts are not sufficiently developed for the Court to determine the applicability of the "continuing violation" doctrine to Plaintiff's Eighth Amendment claims.

Therefore, the undersigned **FINDS** that Wexford is not entitled to dismissal of the complaint based upon the statute of limitations.

### IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **DISMISS** the United States, with prejudice; **GRANT** the DCR's Motion to Dismiss, (ECF No. 27), and **DISMISS** Plaintiff's complaint against the DCR, with prejudice, **REMOVING** that party from the style of the case; **DENY** the Motion to Dismiss of Wexford, (ECF No. 36); and allow Plaintiff to continue discovery on the claims asserted against Wexford.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers. and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** August 1, 2019

Cheryl A. Eifert
United States Magistrate Judge