IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TAMMY SHERRELL WILSON,**

      **Plaintiff,**

**v.**                                     **Case No. 3:18-cv-00890**

**UNITED STATES; WEST VIRGINIA
DIVISION OF CORRECTIONS;
WEXFORD MEDICAL and
ADMINISTRATION/STAFF
AT FAULT, (1990 through present);
et al.,**
           **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's Motion to Amend and Join Additional Parties. (ECF No. 68). The defendants have filed memoranda in opposition to the Motion. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion, in part, as it applies to some of the proposed defendants. The remaining defendants are addressed in the Proposed Findings & Recommendations filed contemporaneously with this Memorandum Opinion and Order.

## I.    Standard of Review for Motions for Leave to Amend

Amendments to the complaint are governed by Federal Rule of Civil Procedure 15. Rule 15(a)(1) addresses amendments as a matter of course, allowing the plaintiff to amend the complaint within twenty-one days after serving it on the defendants, or within twenty-one days after a responsive pleading or motion to dismiss is filed under Rule 12(b),(e), or (f), whichever is earlier. F. R. Civ. P. 15(a)(1). In all other cases—such as the instant case—

the plaintiff may only amend the complaint with the opposing party's written consent, or with leave of court. Fed. R. Civ. P. 15(a)(2). Here, the opposing parties do not consent; therefore, an amendment to the complaint requires leave of court. Rule 15(a)(2) provides guidance to the court when considering a motion for leave to amend the complaint. Rule 15(a)(2) directs that the court should "freely give leave" to file an amended complaint "when justice so requires." *See also Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities.").

Generally, leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir. 2007) *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)). "In determining whether a proposed amendment is futile, a court may consider whether the proposed amendment could withstand a motion to dismiss." *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10CV653, 2010 WL 3522084, at *2 (E.D. Va. Sept. 1, 2010) (citing *Perkins v. United States,* 55. F .3d 910, 917 (4th Cir. 1995)) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); *also Johnson,* 785 F.2d at 510 (holding that a motion for leave to amend should be denied "when the proposed amendment is clearly insufficient or frivolous on its face.") (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.

1980); *Jones v. N.Y. Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999) (finding that amendments subject to "immediate dismissal" for failure to state a claim are "futile" and should not be allowed).

## II.    **Relevant Legal Principles**

The West Virginia Division of Corrections ("DCR") and Wexford Health Sources, Inc. ("Wexford") argue that the proposed amended complaint, which adds new defendants, but not new claims, should be rejected as futile. The defendants raise a number of legal arguments in opposition to Plaintiff's proposed amended complaint; accordingly, the relevant legal principles are discussed below.

### A.  **Pleading and Plausibility**

Federal Rule of Civil Procedure 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This mandate "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the–defendant–unlawfully–harmed–me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under the provisions of 28 U.S.C. § 1915A, when a prisoner seeks to prosecute a complaint against a government entity or its officers or employees, the court must screen the pleading and dismiss it, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant "who is immune from such relief." 28 U.S.C. § 1915A. A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25, 31 (1992). Likewise, a complaint fails to state a compensable claim, and therefore should be

dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court of the United States ("Supreme Court") further clarified the "plausibility" standard in *Iqbal,* stating that the court is required to accept as true the factual allegations asserted in a complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Plaintiff submits the proposed amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.  Personal Capacity Versus Official Capacity Claims Under § 1983

An individual acting under color of state law can be sued for violations of a prisoner's constitutional rights in either the individual's official or personal capacity. A

prison official may be sued in her personal capacity for the official's own acts or omissions occurring under color of state law. When sued in her personal capacity, the prison official may be liable for money damages.

In contrast, a prison official may not be sued in her official capacity for ***money*** damages, because the official is entitled to sovereign immunity. The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Thus, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. The Supreme Court explained in *Will*, "[o]bviously, state officials literally are persons. But

a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.*

The Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Hafer v. Melo*, 502 U.S. 21, 22-23 (1991). The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Therefore, to the extent Plaintiff asserts claims for money damages against the proposed defendants in their official capacities, the proposed defendants will enjoy the same immunity as the State of West Virginia. On the other hand, if the claims are "personal-capacity" claims, the proposed defendants will not be afforded the same protection, but "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (recognizing that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).

## C. Exception for Official Capacity Claims Seeking Prospective Relief

As stated, official capacity claims for money damages are prohibited; however, "the

Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"; this is known as the *Ex parte Young* exception.[1] *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Freeland v. Ballard*, 6 F. Supp.3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Consequently, to the extent Plaintiff seeks prospective relief from any of the proposed defendants having proximity to and responsibility for a challenged state action, the claims may go forward.

### D. Claims Based on *Respondeat Superior* Versus Supervisory Liability

The law is well settled that "[t]here is no respondeat superior liability under § 1983." *Johnson v. Potomac Highlands Reg'l Jail*, No. CIV.A. 5:06CV1, 2007 WL 1258879,

---

[1] This is one of the three recognized exceptions to Eleventh Amendment immunity. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). The other two, waiver and abrogation by Congress, do not apply in this case.

at *2 (N.D.W. Va. Apr. 30, 2007) (citing *Monell,* 436 U.S. at 691). In other words, "§ 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002) (citing *Monell, supra*). Nevertheless, a supervisor may be held liable under § 1983 in certain circumstances.

First, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Johnson*, 2007 WL 1258879, at *2 (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1997)). Second, "when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible." *Id.* (citing *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1113 (4th Cir. 1982)). Third, "a supervisor may be liable under § 1983 if the following elements are established: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994)). A plaintiff "cannot satisfy this burden of proof by pointing to a *single incident or isolated incidents* ...." *Oliver*, 250 F. Supp. 2d at 599. Rather, "supervisory liability may only be imposed where 'there is a history of widespread abuse.'" *Id.* (quoting *Wellington V. Daniels,* 717 F.2d 932, 936 (4th Cir. 1980)). Therefore, while Plaintiff cannot attempt to hold a supervisor liable solely due to his managerial role, she may prosecute a supervisory liability claim if the factual basis for such a claim is

contained in the complaint.

**E. Eighth Amendment Claims Based on the Conditions of Confinement**

In order to pursue a § 1983 claim based on the conditions of confinement, Plaintiff must demonstrate that each proposed defendant's alleged misconduct rises to the level of a constitutional violation. The Eighth Amendment to the United States Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). As such, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, "only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

In order for Plaintiff to state a *prima facie* case that her conditions of confinement violated the Eighth Amendment, she must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison official had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.

1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (citing *Wilson*, 501 U.S. at 298-300).

To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiff] must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters*, 989 F.2d 1375, 1379–80 (4th Cir. 1993)). "The showing necessary to demonstrate that the deprivation of which a prisoner complains is serious enough to constitute cruel and unusual punishment 'varies according to the nature of the alleged constitutional violation.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

To fulfill the subjective component, Plaintiff must demonstrate a "deliberate indifference" to her health or safety by the defendants. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the

> official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012) (citing *Williams*, 77 F.3d at 761). Put simply, the proposed defendants had a sufficiently culpable state of mind if they were aware of an excessive risk of harm to Plaintiff's health or safety, but were deliberately indifferent to it. *See Wilson*, 501 U.S. at 303. "In other words, the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so*." Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To establish that a prison official's actions constitute deliberate indifference to a serious medical need, the treatment must be "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

If the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. An inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). A mere difference of opinion about whether medical care is needed is usually insufficient to maintain a valid cause of action. *Id.* at 48 (citing *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975)).

Of relevance to this case, "[t]aunting comments and slurs by [prison officials] are

unprofessional and reprehensible, but do not in and of themselves support a claim of constitutional violation." *Johnson v. Robinette*, No. CV GJH-17-3401, 2019 WL 1331310, at *4 (D. Md. Mar. 22, 2019); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) ("However, acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citing *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979)). According to established law, the verbal abuse of inmates by correctional facility staff, without more, is not actionable under § 1983. *See Tokley v. Ratliff*, No. CIV A 707CV00109, 2007 WL 1046955, at *1 (W.D. Va. Apr. 3, 2007) (citing *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990)); *also Rahn v. Barksdale,* No. 7:11-cv-00563, 2011 WL 6131076, at *2 (W.D. Va. Dec. 8, 2011) (holding that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety" do not amount to constitutional violations.); *Owens v. Vanmeter*, No. CIV.A. RWT-09-1780, 2010 WL 817315, at *3, n. 5 (D. Md. Mar. 4, 2010) ("The use of racist epithets, while offensive, is not actionable under 42 U.S.C. § 1983.") (collecting cases); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); *Burdos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("[T]hreats and offensive language do not constitute an actionable adverse action under § 1983."); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that verbal taunts and abuse do not give rise to liability under § 1983); *and Haywood v. Gifford*, No. 1:17-CV-398, 2017 WL 5633316, at *4 (S.D. Ohio Oct. 4, 2017), *report and recommendation adopted*, No. 1:17-CV-398, 2017 WL 5598167, at *4 (S.D. Ohio Nov. 21, 2017) ("[I]t is well-settled that '[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983

claim for relief.'") (citing *Wingo v. Tennessee Dep't of Corp.*, 499 F. App'x 453, 455 (6th Cir. 2012)).

### F. The Prison Litigation Reform Act ("PLRA")

In addition to the legal principles set forth above, Plaintiff's claims for money damages are governed by the PLRA, 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F. Supp. 1318 (S.D. Ind. 1997); *See also Hammond v. S.C. Dep't of Corr.*, No. C.A. 4:06-3357, 2007 WL 2822394, at *4 (D.S.C. Sept. 25, 2007) (the plaintiff's complaints of eye, skin, and throat irritation after being sprayed with mace did not provide a serious or significant physical injury as the plaintiff never sought medical treatment); *Webb v. McKnight*, No. CIV.A. 7:06CV00734, 2006 WL 3761382, at *2 (W.D. Va. Dec. 20, 2006), *aff'd*, 225 F. App'x 117 (4th Cir. 2007) ("[T]he injuries of which [the plaintiff] complains-indigestion, constipation, headaches, occasional vomiting, and emotional distress-are not sufficiently serious to rise to the level of an Eighth Amendment violation."); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) ("The sliver of glass in [the plaintiff's] palm was no doubt uncomfortable, but it was not a serious injury."); *Alexander v. Tippah Cty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (dismissal of claims where inmates were held in small cell

with clogged toilet drain and exposed to sewage for 24 hours as only physical injuries, nausea and vomiting, were not "severe enough to warrant medical attention" and were not "a symptom of some more serious malady, or had any lasting effects"); *Laughlin v. Mayor of Duffield*, VA, No. 7:07CV00491, 2007 WL 3339504, at *1 (W.D. Va. Nov. 7, 2007) (collecting cases).

"A plaintiff seeking compensatory damages for emotional distress cannot rely on 'conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred,' but, rather, 'the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated.'" *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). This Court, as well as other courts in the Fourth Circuit, have found that "generalized claims of adverse mental health" are not sufficient to establish a significant mental injury without some further specification. *See Germain v. Bishop*, No. CV TDC-15-1421, 2018 WL 1453336, at *13 (D. Md. Mar. 23, 2018); *see also Powell v. Fed. Bureau of Prisons*, No. 1:08-CV-00199, 2009 WL 3160124, at *4 (S.D.W. Va. Sept. 25, 2009) ("Plaintiff merely alleges that she has suffered 'mental anguish' as a result of the above conditions of confinement," which is not sufficient to state a plausible Eighth Amendment claim); *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) (inmates failed to sufficiently specify a mental injury where they said only that "the overall conditions of their confinement [placed] them under 'great stress' and caused them 'great emotional and physical suffering.'"); *Gannon v. Cent. Virginia Reg'l Jail*, No. CIV.A. 7:08CV00394, 2008 WL 2853629, at *1 (W.D. Va. July 22, 2008) (dismissing the plaintiff's claim where "the injuries are entirely speculative and thus are not sufficiently serious to rise to the

level of an Eighth Amendment violation.").

### G. Denial of Access to Courts

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners have a constitutional right to meaningfully and effectively access the courts. To satisfy the prisoner's constitutional right, correctional facilities have an obligation to provide adequate law libraries, or assistance from individuals trained in the law. *Bounds,* 430 U.S. at 828 (holding that prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law.") However, as the Supreme Court later clarified, the obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

In *Lewis*, the Court emphasized that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see, also, Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D.W. Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance."). Instead, according to the *Lewis* Court, *Bounds* merely reaffirmed a prisoner's right to meaningfully access the courts. *Lewis*, 518 U.S. at 351. According to the *Lewis* Court, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* (citation omitted). The *Lewis* Court added that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the

conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

In addition to providing legal resources, prison officials may not actively interfere with a prisoner's efforts to access the courts. *See, e.g., Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) (concluding that the confiscation of legal materials and the unavailability of writing supplies might constitute an unconstitutional interference with an inmate's right of access to the courts.); *Carter v. Hutto,* 781 F.2d 1028, 1031–32 (4th Cir. 1986) (holding that the alleged confiscation or destruction of an inmate's legal materials relating to his petition for a writ of *habeas corpus* stated "a valid claim based on the deprivation of access to the courts, a right of vital importance to prisoners and to the integrity of our criminal justice system."). Nonetheless, a temporary deprivation of legal documents may not rise to the level of a constitutional deprivation; particularly, when there are legitimate penological reasons for the deprivation. *Lewis,* 518 U.S. at 361-62 (finding that prisoners deprived of their legal papers for sixteen days did not state a claim of constitutional significance, because the deprivation was the "product of prison regulations related to legitimate penological interests.'). Furthermore, to be actionable, interference with a prisoner's right to access the courts must be intentional; "negligence on the part of the defendant is not enough to state a claim." *Eversole v. NFN Curran*, No. 3:12-CV-2, 2017 WL 908201, at *2 (S.D. Tex. Mar. 7, 2017) (citing *Richardson v. McDonnell,* 841 F.2d 120, 121–22 (5th Cir. 1988) *and Snyder v. Nolen,* 380 F.3d 279, 291 n. 11 (7th Cir. 2004)) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts."); see also *Lewis,* 518 U.S. at 350 ("In the cases to which *Bounds* traced its roots, we had protected that right by

prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates.").

The Supreme Court further explained that in order for a prisoner to bring a plausible claim of denial of access to courts, the prisoner must demonstrate actual injury or "that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* The Court provided some examples of a plausible claim: "[A prisoner] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.; see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct); *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library.").

At least two federal district courts within the Fourth Circuit have rejected arguments that the right to access the courts is violated by limiting an inmate to one hour of law library time every week or every other week, where no actual harm from the time limitation is shown. *See Watts v. Johnson*, No. 7:07-cv-00323, 2007 WL 2110341, at *1-*2 (W.D. Va. July 18, 2007); *Sterling-Earl v. Gray*, No. 7:06CV00196, 2006 WL 1318367, at *5-6 (W.D. Va. May 15, 2006); *Skundor v. Painter*, No. 5:00-0463, 2002 WL

32334397, at *4-6 (S.D. W. Va. Sept. 26, 2002); *see also Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) ("In order for an inmate to show that the library or legal assistance program hindered his efforts to pursue a civil legal claim, he must show that he encountered more than mere delay or inconvenience."). In addition, courts have dismissed claims based on the lack of ancillary tools—such as notary services and copies— when no actual injury is shown. *See Tyler v. Byrd*, No. CV 4:16-0400-MGL-BM, 2017 WL 875859, at *3 (D.S.C. Feb. 14, 2017), *report and recommendation adopted*, No. CV 4:16-00400-MGL, 2017 WL 839535 (D.S.C. Mar. 3, 2017) (holding that lack of notary services, copies, and assistance with legal mailings are not actionable without an injury); *Deans v. Lindsey*, No. C/A 3:073247-CMC-JRM, 2009 WL 436403, at *3 (D.S.C. Feb. 20, 2009) (same); *and Crouchman v. Pickens Cty. Council*, No. CV 9:16-0804-CMC-BM, 2017 WL 767185, at *14 (D.S.C. Feb. 3, 2017), *report and recommendation adopted*, No. CV 9:16-804-CMC-BM, 2017 WL 749393 (D.S.C. Feb. 27, 2017) (dismissing a plaintiff's denial of access to the courts claim when he failed to show an actual injury). Conclusory allegations are insufficient to maintain a claim based on the lack of access to courts.

## H.  Right to Exercise Religious Beliefs

The Free Exercise Clause of the First Amendment to the United States Constitution guarantees inmates the right to free exercise of religion while incarcerated, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), and prohibits customs or policies that are designed to suppress religious beliefs and practices. *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). In addition, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden promotes a compelling governmental interest and is the

least restrictive means of furthering that interest. The failure of a correctional institution to accommodate a prisoner's religious dietary needs by serving religiously inappropriate food may state a claim under the First Amendment and the RLUIPA. *See Carter v. Fleming,* 879 F.3d 132, 140 (4th Cir. 2018) (holding that an inmate stated a plausible claim under the First Amendment and the RLUIPA when he claimed that the defendants were imposing a substantial burden on his religious exercise by serving religiously inappropriate foods on the Common Fare menu in violation of the Common Fare agreement.) (internal markings omitted).

To succeed on a claim of religious discrimination under either of these provisions, an inmate must make an initial showing that he sincerely holds a religious belief and that action by the defendants substantially burdens his religious freedom or expression. "In essence, the plaintiff's claims under the Free Exercise clause and the RLUIPA impose the same requirements: the plaintiff must allege facts showing that a particular action by a particular defendant 'substantially burdened his sincerely-held religious beliefs.'" *Blakely v. Wards*, 2011 WL 2559601, at *11 (D.S.C. May 20, 2011) (quoting *Ajaj v. Federal Bureau of Prisons*, 2011 WL 902440 (D. Colo. 2011)); *see also Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Cutter v. Wilkinson*, 544 U.S. 709 (2005).

The Supreme Court has defined "substantial burden" as "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or an action that compels a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion ... on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). "No substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult'

or inconvenient, but does not pressure the adherent to violate her religious beliefs or abandon one of the precepts of her religion." *Rountree v. Clarke*, No. 7:11CV00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (quoting *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007)). "[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious ... observance was more than an inconvenience to one's religious practice." *Baines v. Hicks*, No. 3:14CV616, 2016 WL 7380558, at *10 (E.D. Va. Dec. 20, 2016) (quoting *Smith*, 502 F.3d at 1278); *Sullivan v. Younce*, No. 3:15CV10, 2017 WL 655175, at *9 (E.D. Va. Feb. 16, 2017) (holding that removal of purported religious materials from inmate's cell was an inconvenience, not a substantial burden on his exercise of religion).

Once a plaintiff satisfies the requirement to demonstrate that the challenged practice substantially encumbers her exercise of religion, the burden of persuasion shifts to the government to demonstrate that the practice is the least restrictive means to further a compelling governmental interest. *Estes v. Clarke*, No. 7:15CV00155, 2018 WL 2709327, at *5 (W.D. Va. June 5, 2018) (citing 42 U.S.C. § 2000cc-2(b)). According to the *Estes* Court, "[t]he least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Id.* (quoting *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015)). Moreover, "[i]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (quoting *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015)). When considering whether a prison's practice is overly burdensome, "[c]ourts must give 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent

with consideration of costs and limited resources.'" *Id.* (quoting *Cutter*, 544 U.S. at 723).

## I. Retaliation for Exercise of Constitutional Rights

"It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights." *Ebersole v. Conover*, No. 7:08CV00503, 2010 WL 3629581, at *10 (W.D. Va. Aug. 27, 2010), *report and recommendation adopted*, No. 7:08CV00503, 2010 WL 3585833 (W.D. Va. Sept. 13, 2010) (citing *Am. Civil Liberties Union v. Wicomico Cnty*, 999 F.2d 780, 785 (4th Cir. 1993)). However, "bare assertions of retaliation do not establish a claim of constitutional dimension." *Boblett v. Angelone*, 942 F. Supp. 251, 254 (W.D. Va. 1996), *aff'd*, 121 F.3d 697 (4th Cir. 1997) (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). Generally in this circuit, inmates' claims of retaliation are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74). Therefore, to state a *prima facie* case of retaliation, Plaintiff must present concrete facts corroborating the claim.

Both statutory and common law provide prison officials with broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges" *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991); *see, also*, W. Va. Code § 25-1-1, *et seq.* A change in the location or condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a constitutional claim only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining

or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (citation omitted). Evidence that an inmate was fired from a prison job or was denied other inmate privileges in retaliation for her exercise of First Amendment rights, however, is sufficient to support a plausible claim under § 1983. *Patel v. Moran*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (citing *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978).

While a prisoner has no constitutional entitlement to and/or due process interest in accessing a grievance procedure, she does have a right to be free from retaliation for filing grievances and complaints. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017). "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Am. Civil Liberties Union v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). "[T]o state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). A plaintiff suffers adverse action "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Id.* at 250. To establish a causal connection, "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity." *Constantine v. Rectors &*

*Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).

### J. Right to Send and Receive Mail

While prison inmates have a First Amendment right to send and receive mail, *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989), that right is not unfettered. *See, e.g., Altizer v. Deeds*, 191 F.3d 540, 547-48 (4th Cir. 1999) (holding that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional...."). In order to state a claim based upon prison mailroom procedures, an inmate must generally show that the procedures resulted in actual harm or prejudice to her ability to communicate with a court or counsel. *See Scott v. Bristol City Jail*, No. 7:10CV00379, 2010 WL 4449555, at *1 (W.D. Va. Oct. 29, 2010) (citing *Lewis*, 518 U.S. at 351). Isolated or inadvertent incidents of lost mail, mail tampering, or the mishandling of mail are not actionable under § 1983. *Id.*; *Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003), *aff'd*, 88 Fed. Appx. 639 (4th Cir. 2004) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983); *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) *Averhart v. Shuler*, 652 F. Supp. 1504 (N.D. Ind.), *aff'd*, 834 F.2d 173 (7th Cir. 1987) (holding that the negligent opening of an inmate's mail did not give rise to a constitutional violation).

### K. Gender Discrimination

Inmates are protected from gender discrimination by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause directs governments that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause, a plaintiff must show that the defendants acted with an

intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). A plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001). "If a plaintiff makes such a showing, the court then determines whether the disparity in treatment can be justified under the requisite level of scrutiny." *Washington v. McAuliffe*, No. 7:16-CV-00476, 2019 WL 1371859, at *4 (W.D. Va. Mar. 26, 2019) (citing *Morrison*, 239 F.3d at 654).

Claims of gender discrimination are analyzed using a heightened standard of judicial scrutiny, sometimes called the "intermediate scrutiny" standard. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1690 (2017); *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 242 (4th Cir. 2010) ("Precedent dictates, and the parties agree, that courts apply 'intermediate scrutiny' to statutes that classify on the basis of gender.) (citations omitted). "[A] party seeking to uphold a policy that expressly discriminates on the basis of gender must carry the burden of showing an 'exceedingly persuasive justification' for the differing treatment." *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir. 1983) (quoting *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724 (1982)). In particular, "[t]he defender of legislation that differentiates on the basis of gender must show 'at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.'" *Morales-Santana,* 137 S. Ct. at 1690 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

"[W]hat the Equal Protection Clause requires in a prison setting is parity of

treatment, as contrasted with identity of treatment, between male and female inmates."
*Bukhari v. Hutto,* 487 F. Supp. 1162, 1172 (E.D. Va. 1980) (citation omitted). A reviewing
court must consider the totality of prison conditions to determine whether parity exists
and must remedy differences unrelated to valid penological concerns. *Id.* Importantly, an
inmate's rights under the Equal Protection Clause may be subject to restrictions that are
reasonably related to a legitimate penological interest. *See Morrison,* 239 F.3d at 655.
"Legislative distinctions based on gender may thus be justified by an important
governmental interest in recognizing demonstrated differences between males and
females. But intermediate scrutiny will reject regulations based on stereotypical and
generalized conceptions about the differences between males and females." *West v.
Virginia Dep't of Corr.*, 847 F. Supp. 402, 405 (W.D. Va. 1994) (quoting *Faulkner v.
Jones,* 10 F.3d 226, 231 (4th Cir. 1993), *and Hogan,* 458 U.S. at 724–25))
(unconstitutional to base classifications on "traditional, often inaccurate, assumptions
about the proper roles of men and women"). While some degree of deference should be
given to the expertise of prison officials in the administration of prisons, *Ashann-Ra v.
Com. of Va.,* 112 F. Supp. 2d 559, 571 (W.D. Va. 2000), gender disparity in the treatment
of inmates must still be justified by a compelling goal. *Compare Pitts v. Thornburgh,* 866
F.2d 1450 (D.C. Cir. 1989) (policy housing long-term D.C. female inmates in West Virginia
did not violate Equal Protection even though similarly situated male inmates were housed
nearer to D.C., because the difference in treatment was based on the need to correct severe
overcrowding in D.C. facilities and not on archaic notions of a woman's role contemporary
society) *with West,* 847 F. Supp. at 407 (holding that Virginia violated the Equal
Protection Clause by offering a beneficial sentencing option of boot camp only to male
inmates). "The justification must be genuine, not hypothesized or invented post hoc in

response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *United States v. Virginia*, 518 U.S. 515, 533 (1996). "Savings in time, money and effort do not justify gender-based discrimination." *Ashann-Ra*, 112 F. Supp. 2d at 570 (citing *Califano v. Goldfarb,* 430 U.S. 199, 217 (1977)).

### L. Due Process Claims

Plaintiff appears to raise a due process claim related to property of hers that was confiscated and never returned, or that went missing. To the extent that the loss of Plaintiff's property was caused by the negligence of a prison official, the Due Process Clause is not violated. *Daniels v. Williams*, 474 U.S. 327, 328 (1986), ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."); *Nwaokocha v. Sadowski*, 369 F. Supp.2d 362, 370 (E.D.N.Y. 2005) (holding that "negligently misplacing an inmate's property does not establish a denial of due process."). Similarly, intentional acts causing the loss or destruction of property do not violate an inmate's due process rights when meaningful post-deprivation procedures are in place. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *and Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986). The ability to file state court claims for conversion and the availability of inmate grievance processes have been held to constitute meaningful post-deprivation remedies. *See Kidd v. Bradley*, 578 F. Supp. 275, 276–77 (N.D.W. Va. 1984) ("Under the common law of West Virginia, '[t]he tortious

or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is ... a conversion of the property for which ... [a cause of action] will lie.' The common law likewise recognizes a cause of action for the negligent deprivation of, or injury to, one's personal property rights. Inasmuch as these common law actions provide the Plaintiff at bar with an adequate post-deprivation remedy, the Court finds that the Plaintiff has not stated a cause of action under Section 1983.") (citations omitted); *Goodman v. Ramey*, No. CIV.A. 2:12-0439, 2012 WL 5966642, at *4 (S.D.W. Va. Nov. 29, 2012) (holding that an inmate failed to state a constitutional claim for the loss of his property when he could have challenged the taking "in a garden-variety tort claim in state court."); *Whitehead v. Beard*, No. CIV.A. 04-CV-1853, 2006 WL 891053, at *8 (E.D. Pa. Mar. 30, 2006) ("The Third Circuit has held that the DOC's prison grievance procedure provides an adequate post-deprivation of property remedy."); *and Cooper v. Wright*, No. 7:15CV00572, 2016 WL 7165994, at *4 (W.D. Va. Dec. 6, 2016) (holding that prisoner failed to demonstrate that postdeprivation remedies were not available when grievance procedures addressed the issue).

## M.  Statute of Limitations for § 1983 Claims

In an action brought pursuant to 42 U.S.C. § 1983, the statute of limitations is determined by the law of the State in which the action is brought. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.") (citing *Owens v. Okure,* 488 U.S. 235, 249–250 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279–280 (1985)). "Where state law provides multiple statutes of limitations for personal injury, courts considering § 1983 claims

should borrow the general or residual statute for personal injuries." *Owens,* 488 U.S. at 249-50. In West Virginia, the residual statute of limitations for a personal injury claim is two years. *See* W. Va. Code § 55-2-12(b) (providing that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]"). Therefore, a two-year limitations period is typically applied to claims filed in this district asserting Eighth Amendment violations. *See, e.g., Haynes v. Jimenez*, No. CIV.A. 5:05-CV-00820, 2008 WL 565028, at *7 (S.D.W. Va. Feb. 29, 2008).

Although state law governs the limitations period, federal law determines when the cause of action accrues, thus triggering the running of the limitations period. *Wallace,* 549 U.S. at 388. "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *See A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)) (internal quotation omitted). However, in the case of a "continuing violation," the statute of limitations does not begin to run until the wrongdoing ceases. *Patrick v. Sharon Steel Corp.,* 549 F. Supp. 1259, 1264 (N.D.W. Va.1982) ("Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease."). The "continuing violation" doctrine applies to prisoner complaints asserting Eighth Amendment infringements. *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) ("Consistent with these views expressed by our sister circuits, we conclude that a prisoner may allege a continuing violation under Section 1983 by identifying a series of acts or omissions that demonstrate deliberate indifference to a serious, ongoing medical need. The statute of limitations does not begin to run on such a claim for a continuing violation of a prisoner's

Eighth Amendment rights until the date, if any, on which adequate treatment was provided."). Pursuant to this doctrine, "[a] plaintiff's claim of a continuing violation may extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act." *Id.* (citing *Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001).

## III.   **Proposed Defendants**

In the Motion to Amend, Plaintiff seeks to join approximately twenty individuals as defendants. Eleven of those individuals are current or former employees of the DCR; including (1) Warden Lori Nohe, (2) Librarian Susan Wendleken/Birdsong, (3) Former Commissioner James Rubenstein, (4) Correctional Officer Cheryl Spencer, (5) Associate Superintendent of Operations Nathan Ball, (6) Prior Training Director and Magistrate John Markley, (7) Magistrate Sherry Clatworthy; (8) Director of Inmate Services T. J. Ryder, (9) Former Warden David Ballard, (10) Former Unit Manager Paul Stump, and (11) Former Employee Julie Price. Three are employees of Wexford; including, (1) R.N. Supervisor Heidi Beegle , (2) Nurse Practitioner Amanda Ford, and (3) Physician Sherry Johnson. One, Kitchen Supervisor Candy Davis, is an employee of Aramark Food Services, and the rest are Jane and John Does. Each of the proposed defendants are considered in this Order, or in the Proposed Findings and Recommendations.

### A.  **Employees of DCR**

Preliminarily, the undersigned notes that the DCR objects to the proposed amendment on the basis that it contains no factual allegations. However, Plaintiff states in her Motion to Amend that she is incorporating the facts set forth in her complaint and asks only to join party defendants at this time. (ECF No. 68 at 1). As the factual predicate supporting the proposed amendment is contained in the complaint and its

supplementations, the Court has considered those documents in examining the propriety of Plaintiff's Motion for Leave to Amend.

*1. Warden Lori Nohe*

Plaintiff seeks to add Warden Nohe in both her personal and official capacities. As previously explained, Warden Nohe is entitled to sovereign immunity from money damages for any claims asserted against her in her official capacity. Furthermore, Plaintiff cannot maintain an official capacity claim against Warden Nohe for prospective relief, because she is no longer the Warden at Lakin Correctional Center ("Lakin"). Nonetheless, Plaintiff can substitute Lakin's current Warden for Warden Nohe, and the current Warden can be sued in his official capacity for prospective relief related to alleged unconstitutional policies and procedures at Lakin. In particular, Plaintiff complains that the policies and procedures at Lakin are discriminatory on the basis of gender and unconstitutionally limit her access to educational opportunities, entertainment, and social interaction. She also complains that the Warden implemented a policy to increase the cost to inmates for making copies of documents—even when the documents are needed for legal matters.

Plaintiff also includes allegations in her complaint regarding Warden Nohe's own personal acts and omissions, for which she may be joined as a defendant in her personal capacity. Specifically, Plaintiff claims that Warden Nohe refused to remove Susan Wendleken/Birdsong from overseeing Plaintiff's grievance and legal complaints, although Warden Nohe knew that Ms. Wendleken/Birdsong was violating Plaintiff's constitutional right to access the courts. Plaintiff accuses Warden Nohe of intentionally interfering with Plaintiff's efforts to file a federal lawsuit, as well, by making it difficult for her to prepare and copy documents.

Therefore, Plaintiff's motion to add Warden Nohe as a defendant in her personal capacity is **GRANTED**. In addition, Plaintiff is permitted to join the Warden of Lakin as a defendant in his official capacity based upon the alleged unconstitutional policies at Lakin.

### 2. *Susan Wendleken/Birdsong ("Birdsong")*

Plaintiff sues Birdsong in her personal and official capacities. Plaintiff sets forth sufficient facts in the complaint to add Birdsong as a defendant in her personal and official capacities. In particular, Plaintiff describes actions taken by Birdsong to prevent Plaintiff from filing grievances and a civil rights complaint. In addition, Plaintiff claims retaliation by Birdsong related to Plaintiff's exercise of her first amendment rights, including her right to access the courts. Finally, Plaintiff complains about library practices and procedures that Birdsong implements and enforces in her role as the prison librarian.

Therefore, the motion to add Birdsong as a defendant in both her official and personal capacities is **GRANTED**.

### 3. *Correctional Officer Cheryl Spencer ("Spencer")*

Plaintiff claims that Spencer "singled [Plaintiff] out and emotionally humiliated [her], harassed and retaliated against [her] for reasons that will be revealed during Discovery." (ECF No. 68 at 5). This allegation alone is insufficient to justify joining Spencer as a defendant, because it is conclusory in nature and not supported by specific facts. However, Plaintiff also accuses Spencer of conducting a cell search in which Spencer intentionally removed or damaged religious items belonging to Plaintiff; thereby, interfering with Plaintiff's right to exercise her religion. While the allegations are not especially compelling, at this stage in the litigation, Plaintiff should be permitted to further develop her claims against Spencer; thus, the motion to join Spencer is

**GRANTED.**

However, Plaintiff is **ORDERED** within fourteen days of receipt of this Order to submit any supplemental factual allegations against Correction Officer Spencer that support Plaintiff's claim of retaliation or any of the other claims asserted in the complaint.

*4. Nathan Ball ("Ball")*

Plaintiff asks to join Ball as a defendant in both his personal and official capacities. Her allegations against Ball stem from incidents in which her legal mail was opened and compromised, her medical concerns were ignored, and her right to a properly prepared kosher vegetarian diet was violated. Plaintiff asserts that Ball is the Associate Superintendent of Operations over all of these areas and accuses him of willfully ignoring, or even instigating, constitutional violations.

Accordingly, as Plaintiff states a plausible claim against Ball—albeit one that is light on supporting factual allegations tied directly to Ball—the motion to join Ball is **GRANTED**. At this point, Ball is joined as a defendant in his personal capacity for supervisory violations and in his official capacity for implementing and enforcing alleged unconstitutional policies in the kitchen, medical, and mailroom departments.

However, Plaintiff is **ORDERED** within fourteen days of receipt of this Order to submit any supplemental factual allegations pertaining to Ball that support Plaintiff's claims against Ball. On the other hand, having been provided with the guiding legal principles, if Plaintiff concludes that she cannot establish supervisory or official capacity liability, she may move to withdraw Ball as a defendant.

*5. John Markley ("Markley")*

Plaintiff wishes to join Markley, the former training director for the DCR and a magistrate at a male correctional institution. However, the only factual support provided

by Plaintiff relates to her first civil rights complaint, which she reportedly tried to file in 2011, and to reports Markley allegedly filed concerning Plaintiff's mental health. Plaintiff provides no relevant time frames associated with her claims against Markley, nor does she describe any specific injury resulting from Markley's actions. Her conclusory statement that his actions "affect" many areas of her rehabilitation is inadequate to state a plausible claim.

Therefore, Plaintiff is **ORDERED** within fourteen days of receipt of this Order to submit supplemental allegations specific to Markley that meet the requirements of an Eighth Amendment claim. If Plaintiff determines that her claims against Markley are not sufficient to state a plausible claim of a constitutional violation, she may request to withdraw Markley as a proposed defendant.

### 6. T. J. Ryder ("Ryder")

Plaintiff accuses Ryder, director of inmate services and activities, of being responsible for her dietary restriction and speculates that the restriction "appears to be retaliation for grievances filed against the preparation of Kosher food." (ECF No. 68 at 8). This unsubstantiated allegation is insufficient to state a plausible claim against Ryder.

Therefore, Plaintiff is **ORDERED** within fourteen days of receipt of this Order to submit supplemental allegations specific to Ryder that meet the requirements of an Eighth Amendment claim. If Plaintiff determines that her claims against Ryder are not sufficient to state a plausible claim of a constitutional violation, she may request to withdraw Ryder as a proposed defendant.

### 7. David Ballard ("Ballard")

Plaintiff requests to join Ballard, a former warden of either Lakin or Pruntytown Correctional Center, in both his personal and official capacities. Plaintiff includes no

allegations to support an official capacity claim. As previously explained, a prison official cannot be held liable in his official capacity for past violations. As only prospective relief is available to Plaintiff, and Ballard is no longer warden of the facility, her official capacity claims are precluded. Plaintiff also claims that Ballard is liable in his personal capacity for both his own wrongdoing and for those in his charge; however, she includes no factual basis to support her conclusory statements.

Therefore, Plaintiff is **ORDERED** within fourteen days of receipt of this Order to submit supplemental allegations specific to Ballard that state a plausible claim of a constitutional violation, which is not barred by the two-year statute of limitations. If Plaintiff determines that her claims against Ballard are not sufficient to state a plausible claim of a constitutional violation, then she may request to withdraw Ballard as a proposed defendant.

   8. *James Rubenstein ("Rubenstein)*

Plaintiff asks to join Rubenstein, the prior commissioner of the DCR, as a defendant, because he was "the individual in charge of all rules regulations, and had ultimate responsibility for all orders and actions of the Warden (Lori Nohe) working in Lakin Correctional Center and in a sense all those under her supervision." (ECF No. 68 at 4). As explained, an individual cannot be held liable under § 1983 pursuant to the doctrine of *respondeat superior*. Plaintiff includes no allegations specific to Rubenstein to implicate him in his personal capacity. Moreover, as Rubenstein is the *prior* commissioner, he cannot be joined as a defendant for purposes of prospective relief.

Therefore, Plaintiff is not permitted to join Rubenstein as a defendant. However, she is permitted to substitute the current Commissioner of the DCR in her official capacity and purse prospective relief for the policies and practices of the DCR, which Plaintiff

claims are unconstitutional. One example is Plaintiff's claim under the Equal Protection Clause that female inmates are the victims of gender discrimination in such areas as education, entertainment, medical supplies, visitation, and access to the law library and supplies.

## B. Employee of Wexford

*Heidi Beegle, R.N. ("Beegle")*

Although Plaintiff includes factual allegations indicating that employees of Wexford have been deliberately indifferent to her medical needs, she fails to tie any of those events specifically to Beegle. Plaintiff also fails to provide a factual connection between Beegle, the nursing supervisor at Lakin, and the alleged unconstitutional policies promulgated by Wexford. Beegle's role as a supervisor, alone, cannot subject her to suit, as § 1983 does not recognize claims based solely on the doctrine of *respondeat superior*. Accordingly, at this point, Plaintiff has failed to provide a sufficient ***factual*** basis to join Beegle as a defendant.

Therefore, Plaintiff is **ORDERED** within fourteen days of the receipt of this Order to submit supplemental allegations specific to Beegle that meet the requirements of an Eighth Amendment claim. If Plaintiff determines that her claims against Beegle are not sufficient to state a plausible claim of a constitutional violation, she may request to withdraw Beegle as a proposed defendant.

## C. Employee of Aramark

*Aramark Kitchen Supervisor Candy Davis ("Davis")*

In her complaint, Plaintiff makes several allegations related to actions by Aramark's personnel in violation of Plaintiff's right to a healthy diet and to food prepared consistently with her request for a kosher diet. She asks to join Davis as a defendant,

because Davis was in charge of the kitchen on several occasions when violations occurred and allowed them to happen. Plaintiff does not assert that Aramark has unconstitutional policies; rather, she claims that Davis knowingly allowed others in her charge—and even willfully participated—in these constitutional violations. Therefore, although Plaintiff does not state a claim against Davis in her official capacity, Plaintiff does state a plausible claim against Davis in her personal capacity. As such, the motion to join Davis in her personal capacity is **GRANTED**.

## IV.   Order

For the reasons set forth above, Plaintiff's Motion for Leave to File an Amended Complaint is **GRANTED** as follows:

1.  Warden Lori Nohe is joined as a defendant in her personal capacity;

2.  The Acting Warden of Lakin Correctional Center, J. D. Sallaz, is joined as a defendant in his official capacity for prospective relief;

3.  Susan Birdsong is joined as a defendant in both her personal and official capacities;

4. Correctional Officer Cheryl Spencer is joined as a defendant in her personal capacity;

5. Nathan Ball is joined as a defendant in both his personal and official capacities;

6. Betsy Jividen, the Commissioner of the DCR is joined as a defendant in her official capacity;

7.  Candy Davis, Aramark's supervisor, is joined as a defendant in her personal capacity;

8.  Plaintiff is given fourteen days from the receipt of this Order to provide a specific factual basis for joining as defendants John Markley, T. J. Ryder, David Ballard, James

Rubenstein, and Heidi Beegle, R.N.

9. The DCR is **ORDERED** within **fourteen days** of the date of this Order to provide the Clerk of Court, for service of process, with the last known addresses of the seven individuals joined as defendants. In the alternative, the DCR may accept service of process for the defendants, or provide the name and address of an agent for service of process. Upon receipt of the address, the Clerk shall issue summonses for the newly joined defendants (Nohe, Sallaz, Birdsong, Spencer, Ball, Jividen, and Davis) and provide the summonses and copies of the complaint, (ECF Nos. 3, 6, 7, 8, 9, 15, 18, 26, 68), to the United States Marshals Service. The Marshals Service shall effect service of process pursuant to Rule 4 of the Federal Rules of Civil Procedure and promptly file the returns with the Clerk. The Clerk is instructed to redact the addresses prior to publishing the returns on the docket.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to Plaintiff, counsel of record, and any unrepresented party.

**ENTERED:** August 19, 2019

Cheryl A. Eifert
United States Magistrate Judge