# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**TAMMY SHERRELL WILSON,**

      **Plaintiff,**

**v.**                                    **Case No. 3:18-cv-00890**

**UNITED STATES; WEST VIRGINIA
DIVISION OF CORRECTIONS;
WEXFORD MEDICAL and
ADMINISTRATION/STAFF
AT FAULT, (1990 through present);
et al.,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending is Plaintiff's Motion to Amend and Join Additional Parties. (ECF No. 68). The defendants have filed memoranda in opposition to the Motion, (ECF Nos. 70, 72), and Plaintiff has replied. (ECF No. 75). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 5).

For the reasons set forth below, the undersigned **FINDS** that, in regard to certain of the proposed defendants, Plaintiff has failed to allege facts in her amended complaint that are sufficient to withstand a motion to dismiss; thus, rendering the amended complaint futile as to these defendants. As such, the undersigned **RECOMMENDS** that

the presiding District Judge **DENY** Plaintiff's Motion to Amend and Join Additional Parties Motion to the extent it seeks to join the following proposed defendants: Sherry Clatworthy, Paul Stump, Julie Price, Nurse Amanda Ford, and Dr. Sherri Johnson. The undersigned further **RECOMMENDS** that the motion for leave to join John Doe and Jane Doe defendants be **DENIED,** because Plaintiff has had sufficient time to identify the relevant individuals. The remaining proposed defendants included in Plaintiff's Motion to Amend are addressed in the Memorandum Opinion and Order[1] filed contemporaneously with the Proposed Findings & Recommendations.

## I.    Standard of Review for Motions for Leave to Amend

Amendments to the complaint are governed by Federal Rule of Civil Procedure 15. Rule 15(a)(1) addresses amendments as a matter of course, allowing the plaintiff to amend the complaint within twenty-one days after serving it on the defendants, or within twenty-one days after a responsive pleading or motion to dismiss is filed under Rule 12(b),(e), or (f), whichever is earlier. F. R. Civ. P. 15(a)(1). In all other cases—such as the instant case—the plaintiff may only amend the complaint with the opposing party's written consent, or with leave of court. Fed. R. Civ. P. 15(a)(2). Here, the opposing parties do not consent; therefore, an amendment to the complaint requires leave of court. Rule 15(a)(2) provides guidance to the court when considering a motion for leave to amend the complaint. Rule 15(a)(2) directs that the court should "freely give leave" to file an amended complaint "when justice so requires." *See also Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities.").

---

[1]In the Memorandum Opinion and Order, the undersigned grants Plaintiff leave to join six DCR employees and one Aramark employee, and further grants Plaintiff fourteen days to clarify her claims against four additional DCR employees and one Wexford employee.

Generally, leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir. 2007) *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)). "In determining whether a proposed amendment is futile, a court may consider whether the proposed amendment could withstand a motion to dismiss." *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10CV653, 2010 WL 3522084, at *2 (E.D. Va. Sept. 1, 2010) (citing *Perkins v. United States,* 55. F .3d 910, 917 (4th Cir. 1995)) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); *also Johnson,* 785 F.2d at 510 (holding that a motion for leave to amend should be denied "when the proposed amendment is clearly insufficient or frivolous on its face.") (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980); *Jones v. N.Y. Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999) (finding that amendments subject to "immediate dismissal" for failure to state a claim are "futile" and should not be allowed).

## II.    <u>Relevant Legal Principles</u>

The West Virginia Division of Corrections ("DCR") and Wexford Health Sources, Inc. ("Wexford") argue that the proposed amended complaint, which adds new defendants, but not new claims, should be rejected as futile. The defendants raise a number of legal arguments in opposition to Plaintiff's proposed amended complaint;

3

accordingly, the relevant legal principles are discussed below.

### A. Pleading and Plausibility

Federal Rule of Civil Procedure 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This mandate "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the–defendant–unlawfully–harmed–me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under the provisions of 28 U.S.C. § 1915A, when a prisoner seeks to prosecute a complaint against a government entity or its officers or employees, the court must screen the pleading and dismiss it, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant "who is immune from such relief." 28 U.S.C. § 1915A. A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25, 31 (1992). Likewise, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court of the United States ("Supreme Court") further clarified the "plausibility" standard in *Iqbal,* stating that the court is required to accept as true the factual allegations asserted in a complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Plaintiff submits the proposed amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## B. Personal Capacity Versus Official Capacity Claims Under § 1983

An individual acting under color of state law can be sued for violations of a prisoner's constitutional rights in either the individual's official or personal capacity. A prison official may be sued in her personal capacity for the official's own acts or omissions occurring under color of state law. When sued in her personal capacity, the prison official may be liable for money damages.

In contrast, a prison official may not be sued in her official capacity for ***money*** damages, because the official is entitled to sovereign immunity. The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Thus, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. The Supreme Court explained in *Will*, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.*

The Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Hafer v. Melo*, 502 U.S. 21, 22-23 (1991). The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the

governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Therefore, to the extent Plaintiff asserts claims for money damages against the proposed defendants in their official capacities, the proposed defendants will enjoy the same immunity as the State of West Virginia. On the other hand, if the claims are "personal-capacity" claims, the proposed defendants will not be afforded the same protection, but "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (recognizing that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).

### C. Exception for Official Capacity Claims Seeking Prospective Relief

As stated, official capacity claims for money damages are prohibited; however, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"; this is known as the *Ex parte Young* exception.[2] *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Freeland v. Ballard*, 6 F. Supp.3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award

---

[2] This is one of the three recognized exceptions to Eleventh Amendment immunity. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). The other two, waiver and abrogation by Congress, do not apply in this case.

paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Consequently, to the extent Plaintiff seeks prospective relief from any of the proposed defendants having proximity to and responsibility for a challenged state action, the claims may go forward.

### D.  Claims Based on *Respondeat Superior* Versus Supervisory Liability

The law is well settled that "[t]here is no respondeat superior liability under § 1983." *Johnson v. Potomac Highlands Reg'l Jail*, No. CIV.A. 5:06CV1, 2007 WL 1258879, at *2 (N.D.W. Va. Apr. 30, 2007) (citing *Monell,* 436 U.S. at 691). In other words, "§ 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002) (citing *Monell, supra*). Nevertheless, a supervisor may be held liable under § 1983 in certain circumstances.

First, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Johnson*, 2007 WL 1258879, at *2 (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1997)). Second, "when a supervisor

is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible." *Id.* (citing *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1113 (4th Cir. 1982)). Third, "a supervisor may be liable under § 1983 if the following elements are established: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994)). A plaintiff "cannot satisfy this burden of proof by pointing to a *single incident or isolated incidents ....*" *Oliver*, 250 F. Supp. 2d at 599. Rather, "supervisory liability may only be imposed where 'there is a history of widespread abuse.'" *Id.* (quoting *Wellington V. Daniels,* 717 F.2d 932, 936 (4th Cir. 1980)). Therefore, while Plaintiff cannot attempt to hold a supervisor liable solely due to his managerial role, she may prosecute a supervisory liability claim if the factual basis for such a claim is contained in the complaint.

### E. Eighth Amendment Claims Based on the Conditions of Confinement

In order to pursue a § 1983 claim based on the conditions of confinement, Plaintiff must demonstrate that each proposed defendant's alleged misconduct rises to the level of a constitutional violation. The Eighth Amendment to the United States Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of

the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). As such, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, "only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes,* 452 U.S. at 347).

In order for Plaintiff to state a *prima facie* case that her conditions of confinement violated the Eighth Amendment, she must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison official had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (citing *Wilson,* 501 U.S. at 298-300).

To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiff] must allege 'a serious or significant physical or emotional injury resulting from the challenged

conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler v. Waters,* 989 F.2d 1375, 1379–80 (4th Cir. 1993)). "The showing necessary to demonstrate that the deprivation of which a prisoner complains is serious enough to constitute cruel and unusual punishment 'varies according to the nature of the alleged constitutional violation.'" *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 5 (1992)).

To fulfill the subjective component, Plaintiff must demonstrate a "deliberate indifference" to her health or safety by the defendants. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* Civil Action No. 2:11–cv–01278–TMC–BHH, 2012 WL 2803721 (D.S.C. May 11, 2012) (citing *Williams*, 77 F.3d at 761). Put simply, the proposed defendants had a sufficiently culpable state of mind if they were aware of an excessive risk of harm to Plaintiff's health or safety, but were deliberately indifferent to it. *See Wilson*, 501 U.S. at 303. "In other words, the test is whether the guards know the plaintiff inmate

faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.*" Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To establish that a prison official's actions constitute deliberate indifference to a serious medical need, the treatment must be "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

If the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. An inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). A mere difference of opinion about whether medical care is needed is usually insufficient to maintain a valid cause of action. *Id.* at 48 (citing *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975)).

Of relevance to this case, "[t]aunting comments and slurs by [prison officials] are unprofessional and reprehensible, but do not in and of themselves support a claim of constitutional violation." *Johnson v. Robinette*, No. CV GJH-17-3401, 2019 WL 1331310, at *4 (D. Md. Mar. 22, 2019); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) ("However, acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citing *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979)). According to established law, the verbal abuse of inmates by correctional facility staff, without more, is not actionable under § 1983. *See Tokley v. Ratliff*, No. CIV A 707CV00109, 2007 WL 1046955, at *1 (W.D. Va. Apr. 3, 2007)

(citing *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990)); *also Rahn v. Barksdale,* No. 7:11-cv-00563, 2011 WL 6131076, at *2 (W.D. Va. Dec. 8, 2011) (holding that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety" do not amount to constitutional violations.); *Owens v. Vanmeter*, No. CIV.A. RWT-09-1780, 2010 WL 817315, at *3, n. 5 (D. Md. Mar. 4, 2010) ("The use of racist epithets, while offensive, is not actionable under 42 U.S.C. § 1983.") (collecting cases); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); *Burdos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("[T]hreats and offensive language do not constitute an actionable adverse action under § 1983."); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that verbal taunts and abuse do not give rise to liability under § 1983); *and Haywood v. Gifford*, No. 1:17-CV-398, 2017 WL 5633316, at *4 (S.D. Ohio Oct. 4, 2017), *report and recommendation adopted*, No. 1:17-CV-398, 2017 WL 5598167, at *4 (S.D. Ohio Nov. 21, 2017) ("[I]t is well-settled that '[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.'") (citing *Wingo v. Tennessee Dep't of Corp.*, 499 F. App'x 453, 455 (6th Cir. 2012)).

### F.  The Prison Litigation Reform Act ("PLRA")

In addition to the legal principles set forth above, Plaintiff's claims for money damages are governed by the PLRA, 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical

injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F. Supp. 1318 (S.D. Ind. 1997); *See also Hammond v. S.C. Dep't of Corr.*, No. C.A. 4:06-3357, 2007 WL 2822394, at *4 (D.S.C. Sept. 25, 2007) (the plaintiff's complaints of eye, skin, and throat irritation after being sprayed with mace did not provide a serious or significant physical injury as the plaintiff never sought medical treatment); *Webb v. McKnight*, No. CIV.A. 7:06CV00734, 2006 WL 3761382, at *2 (W.D. Va. Dec. 20, 2006), *aff'd*, 225 F. App'x 117 (4th Cir. 2007) ("[T]he injuries of which [the plaintiff] complains-indigestion, constipation, headaches, occasional vomiting, and emotional distress-are not sufficiently serious to rise to the level of an Eighth Amendment violation."); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) ("The sliver of glass in [the plaintiff's] palm was no doubt uncomfortable, but it was not a serious injury."); *Alexander v. Tippah Cty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (dismissal of claims where inmates were held in small cell with clogged toilet drain and exposed to sewage for 24 hours as only physical injuries, nausea and vomiting, were not "severe enough to warrant medical attention" and were not "a symptom of some more serious malady, or had any lasting effects"); *Laughlin v. Mayor of Duffield*, VA, No. 7:07CV00491, 2007 WL 3339504, at *1 (W.D. Va. Nov. 7, 2007) (collecting cases).

"A plaintiff seeking compensatory damages for emotional distress cannot rely on 'conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred,' but, rather, 'the testimony must establish that the

plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated.'" *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). This Court, as well as other courts in the Fourth Circuit, have found that "generalized claims of adverse mental health" are not sufficient to establish a significant mental injury without some further specification. *See Germain v. Bishop*, No. CV TDC-15-1421, 2018 WL 1453336, at *13 (D. Md. Mar. 23, 2018); *see also Powell v. Fed. Bureau of Prisons*, No. 1:08-CV-00199, 2009 WL 3160124, at *4 (S.D.W. Va. Sept. 25, 2009) ("Plaintiff merely alleges that she has suffered 'mental anguish' as a result of the above conditions of confinement," which is not sufficient to state a plausible Eighth Amendment claim); *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) (inmates failed to sufficiently specify a mental injury where they said only that "the overall conditions of their confinement [placed] them under 'great stress' and caused them 'great emotional and physical suffering.'"); *Gannon v. Cent. Virginia Reg'l Jail*, No. CIV.A. 7:08CV00394, 2008 WL 2853629, at *1 (W.D. Va. July 22, 2008) (dismissing the plaintiff's claim where "the injuries are entirely speculative and thus are not sufficiently serious to rise to the level of an Eighth Amendment violation.").

### G.  Denial of Access to Courts

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners have a constitutional right to meaningfully and effectively access the courts. To satisfy the prisoner's constitutional right, correctional facilities have an obligation to provide adequate law libraries, or assistance from individuals trained in the law. *Bounds,* 430 U.S. at 828 (holding that prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or

adequate assistance from persons trained in the law.") However, as the Supreme Court later clarified, the obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

In *Lewis*, the Court emphasized that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see, also, Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at \*10 (S.D.W. Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance."). Instead, according to the *Lewis* Court, *Bounds* merely reaffirmed a prisoner's right to meaningfully access the courts. *Lewis*, 518 U.S. at 351. According to the *Lewis* Court, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* (citation omitted). The *Lewis* Court added that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

In addition to providing legal resources, prison officials may not actively interfere with a prisoner's efforts to access the courts. *See, e.g., Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) (concluding that the confiscation of legal materials and the unavailability of writing supplies might constitute an unconstitutional interference with an inmate's right of access to the courts.); *Carter v. Hutto,* 781 F.2d 1028, 1031–32 (4th

Cir. 1986) (holding that the alleged confiscation or destruction of an inmate's legal materials relating to his petition for a writ of *habeas corpus* stated "a valid claim based on the deprivation of access to the courts, a right of vital importance to prisoners and to the integrity of our criminal justice system."). Nonetheless, a temporary deprivation of legal documents may not rise to the level of a constitutional deprivation; particularly, when there are legitimate penological reasons for the deprivation. *Lewis,* 518 U.S. at 361-62 (finding that prisoners deprived of their legal papers for sixteen days did not state a claim of constitutional significance, because the deprivation was the "product of prison regulations related to legitimate penological interests.'). Furthermore, to be actionable, interference with a prisoner's right to access the courts must be intentional; "negligence on the part of the defendant is not enough to state a claim." *Eversole v. NFN Curran*, No. 3:12-CV-2, 2017 WL 908201, at *2 (S.D. Tex. Mar. 7, 2017) (citing *Richardson v. McDonnell,* 841 F.2d 120, 121–22 (5th Cir. 1988) *and Snyder v. Nolen,* 380 F.3d 279, 291 n. 11 (7th Cir. 2004)) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts."); see also *Lewis,* 518 U.S. at 350 ("In the cases to which *Bounds* traced its roots, we had protected that right by prohibiting state prison officials from actively interfering with the inmates' attempts to prepare legal documents, or file them and by requiring state courts to waive filing fees, or transcript fees for indigent inmates.").

The Supreme Court further explained that in order for a prisoner to bring a plausible claim of denial of access to courts, the prisoner must demonstrate actual injury or "that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id*. The Court provided some examples of a plausible claim: "[A prisoner] might show, for example, that a complaint he prepared was dismissed

for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.; see also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct); *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library.").

At least two federal district courts within the Fourth Circuit have rejected arguments that the right to access the courts is violated by limiting an inmate to one hour of law library time every week or every other week, where no actual harm from the time limitation is shown. *See Watts v. Johnson*, No. 7:07-cv-00323, 2007 WL 2110341, at *1-*2 (W.D. Va. July 18, 2007); *Sterling-Earl v. Gray*, No. 7:06CV00196, 2006 WL 1318367, at *5-6 (W.D. Va. May 15, 2006); *Skundor v. Painter*, No. 5:00-0463, 2002 WL 32334397, at *4-6 (S.D. W. Va. Sept. 26, 2002); *see also Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) ("In order for an inmate to show that the library or legal assistance program hindered his efforts to pursue a civil legal claim, he must show that he encountered more than mere delay or inconvenience."). In addition, courts have dismissed claims based on the lack of ancillary tools—such as notary services and copies—when no actual injury is shown. *See Tyler v. Byrd*, No. CV 4:16-0400-MGL-BM, 2017 WL 875859, at *3 (D.S.C. Feb. 14, 2017), *report and recommendation adopted*, No. CV 4:16-00400-MGL, 2017 WL 839535 (D.S.C. Mar. 3, 2017) (holding that lack of notary services,

copies, and assistance with legal mailings are not actionable without an injury); *Deans v. Lindsey*, No. C/A 3:073247-CMC-JRM, 2009 WL 436403, at *3 (D.S.C. Feb. 20, 2009) (same); *and Crouchman v. Pickens Cty. Council*, No. CV 9:16-0804-CMC-BM, 2017 WL 767185, at *14 (D.S.C. Feb. 3, 2017), *report and recommendation adopted*, No. CV 9:16-804-CMC-BM, 2017 WL 749393 (D.S.C. Feb. 27, 2017) (dismissing a plaintiff's denial of access to the courts claim when he failed to show an actual injury). Conclusory allegations are insufficient to maintain a claim based on the lack of access to courts.

### H.  Retaliation for Exercise of Constitutional Rights

"It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights." *Ebersole v. Conover*, No. 7:08CV00503, 2010 WL 3629581, at *10 (W.D. Va. Aug. 27, 2010), *report and recommendation adopted*, No. 7:08CV00503, 2010 WL 3585833 (W.D. Va. Sept. 13, 2010) (citing *Am. Civil Liberties Union v. Wicomico Cnty*, 999 F.2d 780, 785 (4th Cir. 1993)). However, "bare assertions of retaliation do not establish a claim of constitutional dimension." *Boblett v. Angelone*, 942 F. Supp. 251, 254 (W.D. Va. 1996), *aff'd*, 121 F.3d 697 (4th Cir. 1997) (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). Generally in this circuit, inmates' claims of retaliation are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74). Therefore, to state a *prima facie* case of retaliation, Plaintiff must present concrete facts corroborating the claim.

Both statutory and common law provide prison officials with broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges" *Gaston v. Taylor*,

946 F.2d 340, 343 (4th Cir. 1991); *see, also*, W. Va. Code § 25-1-1, *et seq.* A change in the location or condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a constitutional claim only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.' ") (citation omitted). Evidence that an inmate was fired from a prison job or was denied other inmate privileges in retaliation for her exercise of First Amendment rights, however, is sufficient to support a plausible claim under § 1983. *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (citing *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978).

While a prisoner has no constitutional entitlement to and/or due process interest in accessing a grievance procedure, she does have a right to be free from retaliation for filing grievances and complaints. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017). "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Am. Civil Liberties Union v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). "[T]o state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" *Martin v.*

*Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). A plaintiff suffers adverse action "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Id.* at 250. To establish a causal connection, "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).

## I. Due Process Claims

Plaintiff appears to raise a due process claim related to property of hers that was confiscated and never returned, or that went missing. To the extent that the loss of Plaintiff's property was caused by the negligence of a prison official, the Due Process Clause is not violated. *Daniels v. Williams*, 474 U.S. 327, 328 (1986), ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."); *Nwaokocha v. Sadowski*, 369 F. Supp.2d 362, 370 (E.D.N.Y. 2005) (holding that "negligently misplacing an inmate's property does not establish a denial of due process."). Similarly, intentional acts causing the loss or destruction of property do not violate an inmate's due process rights when meaningful post-deprivation procedures are in place. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *and Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986). The ability to file state court claims for conversion and the availability of inmate grievance processes have been held

to constitute meaningful post-deprivation remedies. *See Kidd v. Bradley*, 578 F. Supp. 275, 276–77 (N.D.W. Va. 1984) ("Under the common law of West Virginia, '[t]he tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is ... a conversion of the property for which ... [a cause of action] will lie.' The common law likewise recognizes a cause of action for the negligent deprivation of, or injury to, one's personal property rights. Inasmuch as these common law actions provide the Plaintiff at bar with an adequate post-deprivation remedy, the Court finds that the Plaintiff has not stated a cause of action under Section 1983.") (citations omitted); *Goodman v. Ramey*, No. CIV.A. 2:12-0439, 2012 WL 5966642, at *4 (S.D.W. Va. Nov. 29, 2012) (holding that an inmate failed to state a constitutional claim for the loss of his property when he could have challenged the taking "in a garden-variety tort claim in state court."); *Whitehead v. Beard*, No. CIV.A. 04-CV-1853, 2006 WL 891053, at *8 (E.D. Pa. Mar. 30, 2006) ("The Third Circuit has held that the DOC's prison grievance procedure provides an adequate post-deprivation of property remedy."); *and Cooper v. Wright*, No. 7:15CV00572, 2016 WL 7165994, at *4 (W.D. Va. Dec. 6, 2016) (holding that prisoner failed to demonstrate that postdeprivation remedies were not available when grievance procedures addressed the issue).

## J. Statute of Limitations for § 1983 Claims

In an action brought pursuant to 42 U.S.C. § 1983, the statute of limitations is determined by the law of the State in which the action is brought. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.") (citing *Owens v. Okure,* 488 U.S. 235, 249–250

(1989); *Wilson v. Garcia,* 471 U.S. 261, 279–280 (1985)). "Where state law provides multiple statutes of limitations for personal injury, courts considering § 1983 claims should borrow the general or residual statute for personal injuries." *Owens,* 488 U.S. at 249-50. In West Virginia, the residual statute of limitations for a personal injury claim is two years. *See* W. Va. Code § 55-2-12(b) (providing that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]"). Therefore, a two-year limitations period is typically applied to claims filed in this district asserting Eighth Amendment violations. *See, e.g., Haynes v. Jimenez*, No. CIV.A. 5:05-CV-00820, 2008 WL 565028, at *7 (S.D.W. Va. Feb. 29, 2008).

Although state law governs the limitations period, federal law determines when the cause of action accrues, thus triggering the running of the limitations period. *Wallace,* 549 U.S. at 388. "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *See A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)) (internal quotation omitted). However, in the case of a "continuing violation," the statute of limitations does not begin to run until the wrongdoing ceases. *Patrick v. Sharon Steel Corp.,* 549 F. Supp. 1259, 1264 (N.D.W. Va.1982) ("Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease."). The "continuing violation" doctrine applies to prisoner complaints asserting Eighth Amendment infringements. *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) ("Consistent with these views expressed by our sister circuits, we conclude that a prisoner may allege a continuing violation under Section 1983 by identifying a series of acts or omissions that

23

demonstrate deliberate indifference to a serious, ongoing medical need. The statute of limitations does not begin to run on such a claim for a continuing violation of a prisoner's Eighth Amendment rights until the date, if any, on which adequate treatment was provided."). Pursuant to this doctrine, "[a] plaintiff's claim of a continuing violation may extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act." *Id.* (citing *Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001).

## III.  <u>Proposed Defendants</u>

In her Motion to Amend and Join Defendants, Plaintiff seeks to add approximately twenty individuals. Eleven of those individuals are current or former employees of the DCR; three are employees of Wexford; one is an employee of Aramark Food Services; and the rest are Jane Doe and John Doe defendants. In the undersigned's Memorandum Opinion and Order, Plaintiff's Motion for Leave to Amend and Join was granted in part. These Proposed Findings and Recommendations address only the remaining proposed defendants, who are discussed in turn below.

### A.  **Employees of DCR**

Preliminarily, the undersigned notes that the DCR objects to the proposed amendment on the basis that it contains no factual allegations. However, Plaintiff states in her Motion to Amend that she is incorporating the facts set forth in her complaint and asks only to join party defendants at this time. (ECF No. 68 at 1). As the factual predicate supporting the proposed amendment is contained in the complaint and its supplementations, the Court has considered those documents in examining the propriety of Plaintiff's Motion for Leave to Amend.

24

### 1. *Sherry Clatworthy ("Clatworthy")*

Plaintiff identifies Clatworthy as a previous Magistrate at Lakin Correctional Center ("Lakin"), who ordered that correctional staff return to Plaintiff legal materials that were confiscated in 2011. Plaintiff complains that these materials were never returned to her. However, she provides no factual allegations to suggest that Clatworthy had any authority, ability, or responsibility to collect the legal materials and see that they were returned to Plaintiff. Other than describing Clatworthy's role in ordering the return of documents, Plaintiff includes no other allegations concerning Clatworthy. Even construing liberally all of Plaintiff prior statements, she clearly fails to state a plausible constitutional claim against this proposed defendant.

### 2. *Paul Stump ("Stump")*

Plaintiff asks to add Stump as a defendant, because he was Plaintiff's unit manager at the time of some of the alleged retaliation against Plaintiff, and he provided "questionable answers" to some of Plaintiff's grievances. (ECF No. 68 at 9). Plaintiff includes no factual allegations implicating Stump in the alleged retaliation, nor does she explain the phrase "questionable answers." In any event, inmates do not have a constitutional right to a grievance procedure. *See Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, a prison official's failure to respond to a grievance, or his inadequate response, is not actionable under § 1983. *See, e.g., Freeman v. Cartledge,* No. 9:14–cv–3339–DCN, 2015 WL 3965822, at *5 (D.S.C. Jun. 30, 2015) ("[E]ven if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under 42 U.S.C. § 1983"). Therefore, Plaintiff's proposed amended complaint fails to state a plausible claim against this defendant in his personal capacity.

Plaintiff does assert claims for prospective relief. However, she does not provide any factual basis for the Court to conclude that Stump has proximity to and responsibility for implementing the challenged actions. Accordingly, Plaintiff also fails to state a claim against Stump in his official capacity.

### 3. Julie Price (Price")

Plaintiff indicates that Price is a former employee of the DCR, who was in a "supervisory position" over Plaintiff in a prison program and was "privy to some of the retaliation and harassment done to [her]." (ECF No. 68 at 9). These vague statements are the only statements in all of Plaintiff's filings that are specific to Price. As the statements are entirely devoid of facts implicating Price in a constitutional violation, Plaintiff fails to state a claim against Price in her personal capacity. With respect to Plaintiff's claims for prospective relief, other than identifying Price as a supervisor of a prison program, Plaintiff includes no other information that would allow suit against Price in her official capacity. Accordingly, Price should not be added as a defendant.

### B. Employees of Wexford

### 1. Amanda Ford, Nurse Practitioner ("Ford")

In relation to Ford, Plaintiff states only that "[t]his could be covered under Supervisory Liability." (ECF No. 68 at 9). While Plaintiff has made claims against Wexford for deliberate indifference to her medical needs and for alleged unconstitutional policies, she has not alleged Ford's involvement in policy-making, or in the refusal of care, and Plaintiff does not explain in any fashion the basis of Ford's potential supervisory liability. Consequently, in light of the current pleading, Plaintiff's motion to join Ford is futile.

2. *Doctor Sherri Johnson ("Johnson")*

Plaintiff provides the same statements pertaining to Johnson as she provided relative to proposed defendant Ford. Accordingly, Plaintiff fails to state a plausible claim against Johnson.

### C. John Doe and Jane Doe Defendants

Although the Fourth Circuit has allowed lawsuits against John Doe defendants where "the true identity of an unnamed party can be discovered through discovery or through intervention by the court," *Schiff v. Kennedy,* 691 F.2d 196, 198 (4th Cir. 1982), such designations are "generally not favored in the federal courts." *Njoku v. Unknown Special Unit Staff,* No. 99–7644, 2000 WL 903896 (4th Cir. July 7, 2000). Indeed, when this Court addressed the issue of John Doe defendants in 2013, it emphasized the general reluctance of courts to permit such defendants, explaining that "[a]llowing lawsuits against John Doe defendants to proceed is contrary to the Supreme Court's determination that 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Price v. Marsh*, No. 2:12-CV-05442, 2013 WL 5409811, at *4-5 (S.D.W. Va. Sept. 25, 2013) (quoting *Twombly,* 550 U.S. at 558). Nevertheless, in prisoner civil rights litigation, the undersigned has found that John Doe and Jane Doe defendants are often a necessary evil—at least in the early stages of litigation—because prisoners frequently do not know the full names of prison staff; a failure that is not always the result of "willful neglect or lack of reasonable inquiry." *Id.* at *4, n. 3. (quoting " *Saunders v. Boddie–Noell Enters.,* No. 7:08cv1 10, 2008 WL 2553047 (W.D. Va. June 25, 2008)).

Notwithstanding this reality, at some point, a prisoner plaintiff must identify by

name each individual previously known as John Doe or Jane Doe, because "the Fourth Circuit has determined that a judgment may not be entered against a John Doe defendant." *Id.* at *5 (citing *Njoku,* 2000 WL 903896). In the instant case, the undersigned provided Plaintiff with sixty days to conduct discovery for the express purpose of naming the defendants that allegedly violated her constitutional rights. (ECF No. 47 at 2). Moreover, the undersigned ordered the DCR to provide Plaintiff with her inmate file and Wexford to provide Plaintiff with a copy of her medical records. (*Id.* at 1- 2). Plaintiff was granted an extension of time to file her amended complaint, (ECF No. 60), and various additional documents were compelled to be produced to Plaintiff. (*Id.*). Accordingly, Plaintiff has had more than adequate time to identify the John Does and Jane Does. For that reason, her motion for leave to add John Doe and Jane Doe defendants should be denied. Instead, Plaintiff should be allowed an additional fourteen days to name the individuals she wishes to join as John Doe and Jane Doe defendants.

## IV.    **Proposal and Recommendations**

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** the Motion for Leave to Amend the Complaint to the extent that it seeks the joinder of proposed defendants Sherry Clatworthy, Paul Stump, Julie Price, Nurse Practitioner Amanda Ford, Dr. Sherri Johnson, and the John Doe and Jane Doe defendants and give Plaintiff fourteen days to name the individuals she has designated as Jane Does and John Does.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, The

parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers. and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:**  August 19, 2019

Cheryl A. Eifert
United States Magistrate Judge