# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

**TAMMY SHERRELL WILSON,**

    **Plaintiff,**

v.                                                       **Case No. 3:18-cv-00890**

**WEXFORD MEDICAL and**
**ADMINISTRATION/STAFF**
**AT FAULT, (1990 through present);**
**WARDEN LORI NOHE;**
**J. D. SALLAZ; SUSAN BIRDSONG;**
**CORRECTIONAL OFFICER CHERYL SPENCER;**
**NATHAN BALL; BETSY JIVIDEN; and**
**CANDY DAVIS,**

    **Defendants.**

## MEMORANDUM OPINION and ORDER

Pending is Defendants' Motion to Stay. (ECF No. 142). The Motion to Stay is **DENIED** for two reasons. First, staying the Court's February 12, 2020 Order would not stay the Order entered on June 12, 2019. The DCR should have complied with that Order in July 2019. (ECF No. 60). Therefore, a motion to stay the subsequent order is a futile exercise. Second, Defendants Nohe, Sallaz, Birdsong, Spencer, and Ball have no standing to move to stay the February 12, 2020 Order. The February Order compelled the DCR to produce certain information that it had already been ordered to produce. (ECF No. 133). Defendants Nohe, Sallaz, Birdsong, Spencer, and Ball were not compelled to do anything by the Court, and they have supplied no basis for the Court to conclude that they have a personal interest in the information belonging to the DCR.

1

In the absence of standing and a practical purpose, Defendants' Motion to Stay is frivolous.

Preliminarily, the undersigned again reminds defense counsel that there is **no** "United States Magistrate Court" and there are **no** "United States Magistrates." Defense counsel has previously been advised, on more than one occasion, that United States Magistrate Judges are judicial officers sitting in the United States District Courts. In the federal judicial system, the word "Magistrate" is an adjective describing the type of judge; it is not a noun. Notwithstanding these gentle reminders, defense counsel persists in referring to the undersigned as the "magistrate court" and the "magistrate." An attorney, as an officer of the court in which he or she practices, should be familiar with the structure of that court and should properly address its members. Anything less is disrespectful.

As to the Motion to Stay, the Court notes that the West Virginia Division of Corrections and Rehabilitation ("DCR") was ordered on **June 12, 2019** to produce some basic information in a summary fashion regarding alleged illegal gender disparities in its correctional institutions. (ECF No. 60). Plaintiff claims that the DCR has unlawfully limited her access to programs, pay, health care, and recreation for the sole reason that she is female. She further claims that male inmates housed at Mount Olive Correctional Center, who have been convicted of crimes equivalent in severity to the crimes committed by the female inmates of Lakin Correctional Center, receive better educational opportunities, higher inmate pay, more recreational options, a less demanding dress code, better visitation circumstances, and more "extra incentive activities" than the female inmates incarcerated at Lakin. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires correctional

facilities to provide parity of treatment to male and female inmates, who are similarly situated, unless the differences are due to a legitimate penological interest. *Bukhari v. Hutto,* 487 F. Supp. 1162, 1172 (E.D. Va. 1980). As a *pro se* plaintiff, Plaintiff's claims are to be liberally construed. Consequently, she is entitled to collect information supporting her Fourteenth Amendment claim.

The DCR objected to the June 12, 2019 Order on two grounds: that the Order compelled the DCR to provide information that was broader than an initial discovery order entered by the Court and that Plaintiff's gender disparity claim was meritless. (ECF No. 62). The DCR failed to mention in its objections that the undersigned had already clarified that the initial discovery order applied only to the issue in dispute at that time, and did not control subsequent, unrelated discovery requests; particularly, as discovery was in its infancy. In any event, the DCR did not request a stay of the June Order.

Consequently, the compelled information should have been produced to Plaintiff on or before **July 12, 2019**. However, despite there being a valid and enforceable court order in place, the DCR simply filed objections, proceeded to ignore the order, and failed to produce the required information. The DCR was dismissed from the action three months later, in September 2019. One day prior to the DCR's dismissal, Plaintiff brought the DCR's lack of compliance with the June Order to the attention of the Court and asked that the DCR be compelled to comply with the order. (ECF No. 95). The DCR did not respond in opposition to that motion to compel.

Now, more than *seven months* after the information was due pursuant to the Court's June 12, 2019 Order, the remaining defendants attempt a backdoor approach to staying the original order by moving to stay the second order, as it re-compels

3

production of the now past-due information. Even if Defendants' Motion to Stay is granted, however, that stay would not stay the June 12, 2019 Order, which remains in effect. Clearly, a Motion to Stay the June Order is untimely at this point. Therefore, Defendants' Motion to Stay the February Order is denied on the ground that it is futile.

As also noted, Defendants Nohe, Sallaz, Birdsong, Spencer, and Ball have no standing to ask this Court to stay an order compelling the DCR to produce information. The June 12, 2019 Order was directed to the DCR. Only the DCR objected to that Order. (ECF No. 62). The portion of the February 12, 2020 Order at issue was also addressed only to the DCR. Since the remaining defendants are not compelled to produce the disputed information, and the remaining defendants have no personal interest or stake in the information compelled, they have no standing to request a motion to stay. *See Mustang Innovation, LLC v. Sonoco Products Co.,* 2015 WL 4508830, at *2 (D.S.C. Jul. 24, 2015). Although most cases addressing the standing of a party to object to discovery involve motions to quash third-party subpoenas—probably because parties typically do not object to discovery requests that are not directed to them—the concept of standing is applicable to Defendants' Motion to Stay. It follows that if Defendants have no basis upon which to object to the discovery, then they have no ground upon which to request a stay of an order compelling a response to that discovery.

Finally, the undersigned addresses the scope of the information the DCR is required to provide to Plaintiff. In her discovery requests, Plaintiff asked for a wide variety of documents covering an unspecified time frame. The Court sustained the DCR's objections to the breadth and facial burdensomeness of those discovery requests. Nevertheless, to accommodate Plaintiff's right to information related to her Fourteenth Amendment claim, and taking into consideration the burden to the DCR,

the Court limited the information to be provided by the DCR to a written summary of the institutional differences, if any, between Mount Olive Correctional Center and Lakin Correctional Center as they pertained to inmate pay levels, educational opportunities, recreation, open houses, visitation, dress code, accommodations, and "extra incentive activities" over the three-year period of May 2016 to June 2019. (ECF No. 60 at 4). While this summary would require the DCR to examine the programs and regulations at both facilities and compare them, other than the written summary, the DCR was not required to produce policies, procedures, memoranda, or other documentation. The purpose behind this exercise was to determine if Plaintiff's claim of disparity had any basis in fact. Obviously, if no differences in treatment exist, then the DCR likely would not be required to supply any additional information on that claim. On the other hand, if significant disparities do exist, then any additional discovery required could be properly tailored to those differences in treatment.

Despite this plain directive, and despite the fact that ***a summary is the only document the DCR has been compelled to produce***, Defendants and the DCR continue to complain about the "wide range of unspecified documents" they have been required to supply. (ECF No. 143 at 2). Moreover, they complain that the Court "puts the burden of deciding" what is relevant on Defendants, although the question is not one of relevance, but responsiveness to the items specified in the Order. (ECF No. 141 at 8). Defendants simply need to document differences between the two facilities as to the specific categories outlined by the Court (i.e. are the inmate pay levels different; are there more recreation facilities at one versus the other; are there more educational offerings at one versus the other). If there are no differences, the summary will be very brief. Thus, neither of Defendants' objections has merit.

Defendants have shown a pattern of conflating issues and defendants, willfully misunderstanding clear instructions while failing to seek clarification for allegedly unclear instructions, misstating the substance of the Court's orders, and of generally being unfamiliar with the rules of this District and the rule of liberal construction in the context of *pro se* documents. Undoubtedly, Plaintiff's prolific filing has made it difficult to discern the finer points of her claims. Nonetheless, the essence of her claims is clear. Federal courts have an obligation to construe *pro se* pleadings liberally; particularly, when the *pro se* complaint raises civil rights issues. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Given the number of years that Plaintiff has been incarcerated and her numerous grievances, discovery in this case may be more onerous than in most lawsuits initiated by prisoners under § 1983. Defendants claim that the undersigned's June 2019 Order is overly burdensome and unreasonable, but they have failed to provide any support for that claim. "The mere fact that responding to a discovery request will require [a party] to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." *Capetta v. GC Services Ltd. Partnership*, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008). Indeed, Defendants have not demonstrated that the discovery at issue is irrelevant, disproportionate to the needs of the case, burdensome, privileged, cumulative, oppressive, or any of the other reasons that would support a reconsideration of the Court's initial discovery order. The "party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence." *Tucker v. Ohtsu Tire & Rubber Co.,* 191 F.R.D. 495, 498 (D. Md. 2000). Defendants have not satisfied that obligation.

The Clerk is directed to provide a copy of this Order to Plaintiff, counsel of record, and counsel for the DCR.

**ENTERED:** February 26, 2020

Cheryl A. Eifert
United States Magistrate Judge